United States Court of Appeals,

Eleventh Circuit.

Nos. 94-2393, 94-2417.

UNITED STATES of America, Plaintiff-Appellee,

v.

Glenn ANTONIETTI, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Edward FINK, Defendant-Appellant.

June 26, 1996.

Appeals from the United States District Court for the Middle District of Alabama. (No. 93-32-Cr-T-23A), Steven D. Merryday, Judge.

Before EDMONDSON and DUBINA, Circuit Judges, and LOGAN[*], Senior Circuit Judge.

DUBINA, Circuit Judge:

In this consolidated appeal, defendants-appellants Glenn Antonietti ("Antonietti") and Edward Fink ("Fink") appeal their convictions and sentences for conspiracy to manufacture and possess marijuana with intent to distribute and for manufacturing and possession of a quantity of marijuana with intent to distribute.

I. *STATEMENT OF THE CASE*

A. *Procedural History*

A federal grand jury in the Middle District of Florida returned an indictment charging Antonietti and Fink with conspiracy to manufacture and possess with intent to distribute marijuana plants, in violation of 21 U.S.C. §§ 841 and 846 (count one), and

[*]Honorable James K. Logan, Senior U.S. Circuit Judge for the Tenth Circuit, sitting by designation.

manufacturing and possession with intent to distribute marijuana plants, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 (count two). Fink and Antonietti filed motions to suppress evidence. A hearing on the motions was conducted by a United States magistrate judge. The magistrate judge recommended that the motions to suppress be denied, and Fink and Antonietti filed objections to the recommendation. The district court overruled the objections, adopted the Report and Recommendation of the magistrate judge, and denied the motions to suppress.

Fink and Antonietti then pled guilty to both counts of the indictment but reserved their right to appeal the denial of their suppression motions. Fink and Antonietti then perfected their appeals.

B. *Factual Background*

Fink and Antonietti were childhood friends and are current brothers-in-law. They used marijuana as teenagers and continued to do so until their arrests in November of 1992. In order to support their habits, Fink and Antonietti decided to grow their own marijuana. They studied the High Times Magazine, rented a house at 6432 Juniper Street, Port Richey, Florida, and purchased grow lights, electric fans, pots, and potting soil to further this plan. Antonietti even sold his 1968 classic Camaro to finance the project.

After receiving confidential information about suspicious activity at the Juniper Street house, Pasco County Sheriff's detectives began an investigation. On November 4, 1992, a detective at the residence observed an open window near the front

door and noticed a strong odor of marijuana coming from the house. After obtaining a search warrant, the detectives found 131 marijuana plant seedlings, three to four inches high, in one of the bedrooms, as well as 69 marijuana plants in another bedroom and one bathroom. The detectives also found five 1500 watt grow lights hanging from the ceiling. One of the vehicles found on the premises was registered to Antonietti, and the other vehicle and a trailer were registered to Fink and his wife. The house was rented to "Michael Camielo," an alias of Antonietti.

Fink arrived at the residence during the execution of the warrant, and he was promptly arrested. He admitted that he and Antonietti intended to sell the plants and said each had hoped to make $2,000.00 from their efforts. Another 43 plants were found in the garage attic at Fink's home. Antonietti arrived at the Juniper Street residence the following evening and was also arrested. After claiming he was a maintenance man hired to do some work at the house, Antonietti admitted that he was cultivating marijuana plants with Fink. He also admitted that the house was rented under a fictitious name and that he planned to begin a new crop of marijuana after the 70 plants were harvested. A small amount of marijuana and approximately 30 marijuana buds were found at Antonietti's home.

## II. *ISSUES*

1. Whether the district court erred in calculating the appellants' base offense levels by counting seedlings as marijuana plants.

2. Whether the district court erred in calculating the

appellants' base offense levels by counting quantities of marijuana which were intended for personal use.

3. Whether the district court erred in denying the appellants' motions to suppress evidence.

### III. *STANDARDS OF REVIEW*

This court reviews a district court's determination of the quantity of drugs used to establish a base offense level for sentencing purposes under the clearly erroneous standard. *United States v. Taffe,* 36 F.3d 1047, 1050 (11th Cir.1994).

A district court's decision to admit or exclude evidence will not be disturbed on appeal absent a clear abuse of discretion. *United States v. Taylor,* 17 F.3d 333, 338 (11th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 364, 130 L.Ed.2d 317 (1994). This court reviews findings of fact as to a motion to suppress evidence for clear error;  the district court's application of the law to those facts is subject to *de novo* review. *United States v. Diaz-Lizaraza,* 981 F.2d 1216, 1220 (11th Cir.1993).

### IV. *ANALYSIS*

We begin our analysis by holding that the district court committed no error in denying the appellants' motions to suppress. The district court's reasoning is sound, and this issue warrants no further discussion.[1]

We next turn our attention to the issue of whether the district court erred in calculating the appellants' base offense levels by counting seedlings as marijuana plants. In *United States v. Foree,* 43 F.3d 1572, 1581 (11th Cir.1995), this court held that

---

[1]*See* Eleventh Circuit Rule 36-1.

a cutting or seedling from a marijuana plant is not considered a plant until the cutting or seedling develops roots of its own. Fink and Antonietti argue that, based upon this decision, the district court erred in counting the 131 seedlings in calculating their base offense levels. As a result, they request us to vacate their sentences and remand the case for resentencing.

The government concedes that the seedlings were improperly counted but argues that the appellants waived this argument because they failed to object to it in the district court in writing or at any hearing. The appellants argue that they raised the seedlings issue at the February 4, 1994, sentencing hearing during which the defense mentioned *United States v. Bechtol,* 939 F.2d 603 (8th Cir.1991), for the proposition that seedlings are not counted if there is not a root formation. Appellants' counsel later cited two additional cases for this same proposition: *United States v. Curtis,* 965 F.2d 610 (8th Cir.1992), and *United States v. Corley,* 909 F.2d 359 (9th Cir.1990). The district court responded that it "would like to read these cases and learn a little bit more about seedlings and males and female plants and that sort of thing and see what this calculation comes up with." R4-61. The court then recessed and offered counsel the opportunity to submit supplemental authority by citation.

The government claims that pursuant to *United States v. Jones,* 899 F.2d 1097, 1102-03 (11th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990), *overruled on other grounds, United States v. Morrill,* 984 F.2d 1136, 1137 (11th Cir.1993) (en banc), the appellants waived this issue. However, in*United States*

*v. Weir,* 51 F.3d 1031, 1033 (11th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996), this court held: "*Jones* provides for post-sentence objections because new issues may arise between the pre-sentence report and the imposition of sentence. If the relevant objection is raised after the presentation of the report, however, but before the actual imposition of the sentence, *Jones* is satisfied." Appellants' counsel mentioned the issue during the hearing, and the district court stated that it would consider it. Furthermore, it must be remembered that *United States v. Foree* had not yet been decided and that there was little existing case law on the issue. The government asserts that the district court had no transcript of the February 4 hearing at sentencing because it was not transcribed until April 25, 1994. The record demonstrates, however, that the district court reviewed handwritten notes and a preliminary transcript prior to sentencing. In addition, during the March 22 continuation of the sentencing hearing, the district court referred to the "cases that [the defendants] and the United States ha[d] pointed to" and overruled "[t]hose [objections] which had to do with the gender of the plant, *the maturity of the plant,* [and] whether the plant was for personal or commercial use." R6-27 (emphasis added).

Although our review of the record persuades us that there was no waiver of this issue by the appellants, there is an alternative basis for vacating the appellants' sentences. Even if there had been no objections, we would still be compelled to vacate the appellants' sentences. We review assertions of error which were

not objected to at trial for plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Olano,* 507 U.S. 725, 732-34, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993); *United States v. Kramer,* 73 F.3d 1067, 1074 (11th Cir.1996). Reversal for unobjected-to-error is possible (but not required) where error is both (1) plain, and (2) affects substantial rights. *Olano,* 507 U.S. at 732-36, 113 S.Ct. at 1777-78; *Kramer,* 73 F.3d at 1074. Because the error here was plain and affected the appellants' substantial rights, we must vacate the appellants' sentences and remand for resentencing.

The final issue presented in this appeal is one of first impression in this circuit: whether the drug quantity for the base offense level calculation under U.S.S.G. § 2D1.1 includes drugs possessed solely for personal use. The district court set the appellants' base offense levels under § 2D1.1 according to the total amount of marijuana seized during their arrests. The district court recognized the lack of precedent within this circuit concerning whether drugs for personal use should be included in this determination, and it declined to follow relevant decisions from the Ninth Circuit on this issue. The district court also found that, even without that legal determination, its use of the total drug quantity for the base offense levels was appropriate based on the facts of this case.

The appellants contend that the drug quantity used to determine their base offense levels under § 2D1.1 should not include marijuana that they possessed merely for personal use. They argue that the Controlled Substances Act, 21 U.S.C. § 841, and the relevant sentencing guidelines' provisions require the

sentencing court to follow the Ninth Circuit's approach and take into account the nature of the purpose for which the appellants possessed the controlled substance.

The government responds that Congress intended large-scale growers like Antonietti and Fink to be punished more severely than a small-scale grower regardless of any quantity they may have planned to retain for personal use. The government also argues that because the appellants pled guilty to conspiracy to manufacture and to manufacturing marijuana, as well as possession with intent to distribute, they should be held accountable under relevant conduct principles for all of the plants regardless of whether they intended to distribute all or only some of them.

The Controlled Substances Act makes it unlawful "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). The corresponding guidelines provide for a base offense level of 26 for such violations involving "[a]t least 100 KG but less than 400 KG of marijuana." U.S.S.G. § 2D1.1(c)(9). The guidelines also provide that such base offense level shall be determined on the basis of all acts or omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(3). Furthermore, "quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." *Id.* at comment. (backg'd.) The threshold question is whether the drug quantity used to determine

the base offense level for manufacturing or possession with intent to distribute includes drugs manufactured or possessed for personal consumption.

In deciding this issue, the First Circuit held that where there is evidence of a conspiracy to distribute, and the defendant is a member, the "defendant's purchases for personal use are relevant in determining the quantity of drugs that the defendant knew were distributed by the conspiracy." *United States v. Innamorati,* 996 F.2d 456, 492 (1st Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 409, 126 L.Ed.2d 356 (1993). The First Circuit's view has been followed by the Seventh, Eighth, and Tenth Circuits. *See United States v. Snook,* 60 F.3d 394, 395 (7th Cir.1995); *United States v. Fregoso,* 60 F.3d 1314, 1328 (8th Cir.), *reh'g and sugg. for reh'g en banc denied* (Oct. 10, 1995); *United States v. Wood,* 57 F.3d 913, 920 (10th Cir.1995).

On two occasions, however, the Ninth Circuit has held that "[d]rugs possessed for mere personal use are not relevant to the crime of possession with intent to distribute because they are not "part of the same course of conduct' or "common scheme' as drugs intended for distribution." *United States v. Kipp,* 10 F.3d 1463, 1465-66 (9th Cir.1993). *See also United States v. Rodriguez-Sanchez,* 23 F.3d 1488, 1494-96 (9th Cir.1994).

We choose to reject the Ninth Circuit's analysis and instead follow the majority of the circuits that have considered the personal use issue. We therefore hold that the marijuana intended for personal use by Antonietti and Fink was properly included by the district court in determining their base offense levels.

## V. *CONCLUSION*

For the foregoing reasons, we affirm Antonietti and Fink's convictions in all respects.  Moreover, we affirm their sentences in part, vacate in part, and remand for resentencing consistent with this opinion.

AFFIRMED in part, VACATED in part, and REMANDED.