[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 17, 2008
THOMAS K. KAHN
CLERK

No. 07-15485
Non-Argument Calendar

_____

D. C. Docket No. 06-00284-CR-CG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANNETTE WILLIAMS,
a.k.a. Net Williams,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(June 17, 2008)**

Before TJOFLAT, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Annette Williams appeals her aggregate sentence of 135 months of incarceration for seven offenses involving: (1) conspiracy to possess with intent to distribute at least 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 846; (2) possession with intent to distribute at least 5 grams of cocaine base, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1); and (3) possession with intent to distribute less than 5 grams of cocaine base and 3,4-Methylenedioxymethamphetamine ("MDMA"), in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). Williams argues that the district court improperly included in its drug quantity calculations drugs, which were for personal use. Additionally, she contends that her high-end Guidelines range sentence is substantively unreasonable. Because the district court properly included in its drug quantity calculations drugs that Williams claimed were for personal use and because the court imposed a substantively reasonable sentence based on consideration of the advisory Guidelines, 18 U.S.C. § 3553(a)'s factors, on the record before it, we **AFFIRM**.

## I. BACKGROUND

A federal grand jury issued an indictment against Williams for the following crimes: (1) conspiracy to possess with intent to distribute at least 50 grams of cocaine base from October 2004 until September 2006, in violation of

2

21 U.S.C. §§ 841(a)(1),(b)(1)(A), 846 (Count One); possession with intent to distribute .24 grams of cocaine base on 2 December 2004, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1),(b)(1)(C) (Count Two); (3) possession with intent to distribute .29 grams of cocaine base on 15 December 2004, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1),(b)(1)(C) (Count Three); (4) possession with intent to distribute approximately 13 and no less than 5 grams of cocaine base on 3 February 2005, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1),(b)(1)(B) (Count Four); (5) possession with intent to distribute .50 grams of cocaine base on 7 September 2006, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1),(b)(1)(C) (Count Five); (6) possession with intent to distribute 19 units of MDMA on 8 September 2006, in violation of 21 U.S.C. § 841(a)(1) (Count Six); and (7) possession with intent to distribute approximately 14 and no less than 5 grams of cocaine base on 8 September 2005, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1),(b)(1)(B) (Count Seven).

After an initial plea of not guilty to all counts, Williams changed her plea to guilty as to Count One without a plea agreement. As part of this plea, Williams filed a factual resume wherein she admitted that she sold 15.64 grams of cocaine base to government agents and informants. Thereafter, Williams also entered a plea of guilt as to Counts Two through Seven without a plea agreement.

The probation office prepared a pre-sentence investigation report ("PSI") using the November 2006 Manual. The probation office assigned a base offense level of 34 pursuant to U.S.S.G. § 2D1.1(c)(3) based on the determination that Williams was accountable for the equivalent of between 3,000 and 10,000 kilograms of marijuana. It decreased the offense level by three levels for acceptance of responsibility and entry of a timely plea of guilt pursuant to § 3E1.1(a),(b). Thus, the adjusted offense level was 31. The probation office placed Williams in criminal history category III. Her criminal history included a 1997 federal conviction for conspiracy to possess with intent to distribute cocaine base which included a term of supervised release ending on 23 September 2004. The resulting Guidelines range was 188 to 235 months of incarceration. The PSI also noted the following mandatory minimum sentences were applicable: (1) with respect to Count One, pursuant to 21 U.S.C. § 841(b)(1)(A), a sentence of 10 years of incarceration; (2) with respect to Counts Four and Seven, pursuant to 21 U.S.C. § 841(b)(1)(B), a sentence of 5 years of incarceration.

Prior to sentencing, Williams filed objections to the PSI. She challenged the drug quantity of 245.4 grams of cocaine base that was attributed to her as relevant conduct in the PSI and which increased her base offense level by 8 levels. R1-23 at 1-2, 5. She argued that only 15.64 grams should be attributed to her based on

4

her admissions, the drugs she actually sold, and the drugs seized from her home. Id. at 2. She contended that reliance on Cleveland Pettaway and Charles Watson, the government's cooperating individuals, to support an estimate of 212.63 grams received by her from them was misplaced and overstated the amount. Additionally, Williams argued that the 212.63 grams included the 15.64 grams that she admitted; thus, drug quantity double-counted some drugs. Id. at 3. Further, she argued that U.S.S.G. § 2D1.1 should not apply to her because she was in the position of a possessor, not a distributor. Id. at 3. Thus, she asserted that her total adjusted offense level should be 23 with a Guideline range of 70 to 87 months of incarceration. Id. at 6.

With respect to her sentence, Williams advised that she began using cocaine base 17 years ago at age 28 and had sought treatment for her addiction in 1994, 1999, and 2002-2003. However, she relapsed on completing her term of supervised release in September 2004 and used $100 worth of cocaine base each day thereafter. She maintained that she supported herself with legitimate full-time employment and spent her available money on drugs. In consideration of her addiction and 18 U.S.C. § 3553(a)'s factors, Williams requested a statutory mandatory minimum and downward variant sentence of 60 months of

incarceration with placement in the Federal Bureau of Prisons's drug treatment program.

The government responded that the PSI correctly calculated the drug quantity under the applicable Guidelines provisions. It argued that Williams was not an end-user of drugs as she suggested. Instead, the evidence, including Williams's pleas of guilt, supported the conclusion that she possessed drugs with the intent to distribute them. The government contended that we rejected exclusion of personal use drugs from drug quantity calculations in United States v. Antonietti, 86 F.3d 206 (11th Cir. 1996).

Williams replied that the drugs for personal use should be excluded from the drug quantity. She argued that her case was distinguishable from Antonietti because, unlike the defendants in Antonietti who were convicted for manufacturing marijuana, Williams's conduct involved purchasing drugs for personal use and distribution. Additionally, Williams contended that her sentence should reflect the impending amendments of the Guidelines regarding the disparate treatment of cocaine powder and cocaine base.

Williams filed notice that she intended to call Dr. Neil Capretto as an expert witness at sentencing. With the notice, she submitted Capretto's opinion that the amounts she purchased from Pettaway and Cleveland were within the reasonable

dimensions of quantities of cocaine that could be consumed by an individual.

Also, Williams submitted records diagnosing her as a severe cocaine dependent and a moderate cannabis abuser.

At sentencing, Williams advised the district court that she objected only to the drug quantity calculation and the inclusion of two convictions in her criminal history. After discussing the convictions, the court granted a continuance, but heard testimony with respect to the drug quantity issue.

The government called Wesley Weaver, an undercover officer, who testified that he purchased a $20 rock from Williams on 2 December 2004. He agreed that the rock he purchased could have weighed .24 grams.

Charles Watson testified that Williams purchased half ounces of cocaine base from him on 15 occasions. He also supplied her with smaller quantities of 5 grams and quarter ounces. He explained that, because Williams purchased her drugs as a dealer, she received double the amount a user would receive for the same price. Further, he testified that he never saw Williams use the drugs or observed any signs that she was addicted to drugs. When asked if he was estimating the drug quantities, Watson responded that they were "mostly exact figures" based on his memory, but that "it could be a little more." R1-37 at 26, 28. Although he admitted that he did not weigh his transactions on a scale, he stated

7

that the cookies he received weighed approximately 28 grams a piece. He stated that Williams initiated contact with him in the middle of 2004 with most of their transactions occurring during 2005.

Pettaway testified that he met Williams on her release from prison and began dealing cocaine base with her in late 2005. He sold quarter-ounce quantities to her seven or eight times and smaller amounts about three times a week from the end of 2005 until his arrest in April 2006. Pettaway stated that he never saw Williams use drugs. However, he saw her customers in her house and mediated some of her customers' complaints. Pettaway testified that Williams could earn $150 to $175 with the $50 of drugs she purchased from him.

Williams asked the district court for its ruling regarding exclusion of drugs for personal use from the drug quantity calculations. While acknowledging Williams's argument, the court concluded that drugs for personal use were attributable to a defendant in determining the drug quantity under Antonietti. Williams proffered, for the record, Dr. Capretto's report in support of her argument that she personally consumed most of the drugs she received.

On 2 November 2007, the sentencing hearing recommenced. Williams advised the district court that she had no further information regarding her criminal history. Therefore, the court found the criminal history points of the PSI

to be correct. The court also found that the evidence supported the determination that Williams should be held accountable for the equivalent of at least 6,000 kilograms of marijuana. Describing its calculations as conservative, the court determined that Watson's testimony supported holding Williams accountable for 239 grams of cocaine base and Pettaway's testimony supported holding her accountable for 69 grams of cocaine base for a total of 307 grams. It noted that the MDMA amounts did not impact the offense level calculations, but led to the marijuana equivalency calculations. Thus, the court adopted the PSI as modified by the November 2007 Guidelines amendments related to cocaine base, finding a total offense level of 29, a criminal history category of III, and Guidelines range of 108 to 135 months of incarceration. Although Williams stated that she had no further objections to the Guidelines calculations, she later requested an adjustment for her minor role in the offense. However, the court found an adjustment inappropriate because Williams was only being held accountable for the drugs that she personally sold or possessed.

The district court requested arguments for mitigation. Williams noted that she had seven children. Two of her children personally requested mercy from the court. During allocution, Williams apologized and requested substance abuse treatment. Her counsel emphasized Williams's minor role as compared to her co-

9

conspirators, her desire to overcome and history of attempting to overcome her drug addiction, her full-time work history, and her successful completion of her prior term of supervised release. Williams argued that she only distributed 15.64 grams of cocaine base and that her addiction led to her criminal conduct. Due to her desire to overcome her drug addiction, she requested a 60-month sentence and placement in the 500-hour drug treatment program. Williams contended that incarceration for more than 60 months would not be constructive.

The district court stated that, as it recalled the testimony, Williams did not appear to be a user to people who would have recognized drug use. Because Williams had no record of drug use during supervised release, the court did not believe that Williams was as addicted as alleged although she may use and sell. Instead, the court believed that the evidence supported the conclusion that Williams returned to the business of dealing drugs once supervised release was completed.

Williams noted that she was diagnosed with severe cocaine dependency and addiction in 1994. The district court found Williams's not having used crack cocaine during her five-year period of supervised release to be important. Williams argued that her sobriety showed that supervised release motivated her to make a concerted, consistent, and sincere effort to maintain sobriety. However,

10

without the monitoring, she relapsed into a $100 a day habit. While the court did not dispute that Williams used, it found that the testimony of those selling to Williams supported the conclusion that she was dealing beyond the amounts necessary to support her habit.

Having considered the advisory Guidelines and the factors of 18 U.S.C. § 3553(a), the district court imposed concurrent, top-end, Guidelines range sentences of 135 months of incarceration for Counts One through Seven, followed by 5 years supervised release for Counts One, Four, and Seven and 3 years supervised release for Counts Three, Five, and Six. Specifically, the court stated that a high-end, Guidelines-range sentence was reasonable because: (1) the government did not file notice for the statutory enhancements for which Williams was eligible; and (2) Williams returned to selling cocaine after being previously convicted in federal court for selling cocaine. Further, the court stated that the sentence addressed the seriousness of the offense and the sentencing objectives of punishment, deterrence, and incapacitation. The court recommended that Williams be imprisoned at an institution with a residential comprehensive substance abuse treatment program. The court asked for further objections, which neither party offered, and explained Williams's right to appeal. Williams filed a timely appeal.

11

## II. **DISCUSSION**

On appeal, Williams argues that the district court's drug quantity estimate was clearly erroneous because it included quantities that she personally consumed. She contends that her circumstances are distinguishable from those presented in Antonietti.

We review the district court's interpretation and application of the Guidelines to the facts de novo and its factual determinations for clear error. United States v. Zapata, 139 F.3d 1355, 1357 (11th Cir. 1998) (per curiam). On appeal, Williams does not dispute the district court's mathematical calculations deriving 307 grams of cocaine base or the equivalent of 6,000 kilograms of marijuana. Therefore, this case involves de novo review of the district court's interpretation that the Guidelines's drug quantity calculations include amounts for personal use. Further, Williams abandoned any issue related to the finding that she received 307 grams of cocaine base from Pettaway and Cleveland, which would be equivalent to 6,000 kilograms of marijuana and result in a base offense level of 32 under U.S.S.G. § 2D1.1(c)(3) (2006). See Harris v. Plastics Mfg. Co., 617 F.2d 438, 440 (5th Cir. 1980) (per curiam) (deeming abandoned an issue treated in a perfunctory and underdeveloped manner on appeal).

Williams's argument that the cocaine base, which she intended for her personal use, should be excluded from drug quantity calculations under U.S.S.G. § 2D1.1 is without merit. In United States v. Stone, 139 F.3d 822, 826 (11th Cir. 1998) (per curiam), we specifically rejected the argument that the amount of cocaine base for which a defendant is accountable should be reduced by the percentage obtained for personal use rather than obtained with intent to distribute. Likewise, in Antonietti, we held that, where there is evidence of a conspiracy to distribute and defendant is a member of that conspiracy, the defendant's purchases for personal use are relevant in determining the quantity of drugs that the defendant knew was distributed by the conspiracy. Antonietti, 86 F.3d at 209-10. Therefore, the district court properly included the drugs, which Williams claimed were for personal use, and correctly determined the drug quantity.

Williams also argues that her 135-month sentence is substantively unreasonable because: (1) the circumstances of the offense, including her personal use of a percentage of the drugs, did not warrant a high-end sentence, and (2) she is an atypical drug dealer who has supported herself with full-time employment, desires successful treatment with supervision, and committed the offense to support her addiction instead of to make a profit. She contends that the district court failed to give sufficient weight to these factors. Williams asserts that

the statutory mandatory minimum sentence would have been sufficient but not greater than necessary to achieve the purposes of sentencing.

We review a final sentence for reasonableness. United States v. Talley, 431 F.3d 784, 785 (11th Cir. 2005) (per curiam). In conducting this review, we apply a deferential abuse of discretion standard. Gall v. United States, 552 U.S. __, ___, 128 S. Ct. 586, 594-95, (2007).

Normally, we first review whether the district court committed a procedural error, such as incorrectly calculating "the Guidelines, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, [imposing] a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Id. at ___, 128 S.Ct. at 597. If there were no such procedural errors, we "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id. The factors presented in § 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guideline range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.

Talley, 431 F.3d at 786 (citing 18 U.S.C. § 3553). However, the sentencing court is not required to discuss each individual factor when determining a sentence. United States v. Scott, 426 F.3d 1324, 1329-30 (11th Cir. 2005). A defendant challenging his sentence bears the burden of establishing that it is unreasonable. Talley, 431 F.3d at 788.

Although acknowledging that the Supreme Court in Rita v. United States, 551 U.S. __, 127 S. Ct. 2456, 168 L.Ed.2d 203 (2007) noted "that a sentence, independently calculated by the district court in accordance with Booker, that falls within the properly calculated Guidelines range 'significantly increases the likelihood that the sentence is a reasonable one,'" we do not "presume reasonable a sentence within the properly calculated Guidelines range." United States v. Campbell, 491 F.3d 1306, 1313-14 (11th Cir. 2007).

Here, Williams only argues that her sentence is substantively unreasonable. Thus, she may have waived any claim that it was procedurally unreasonable. Even if not waived; however, as discussed above, the district court's Guidelines calculations were proper. Further, the record demonstrates that the court did not treat the Guidelines as mandatory, fail to consider the § 3553(a) factors, or fail to adequately explain the chosen sentence. Therefore, the court did not commit a procedural error in determining Williams's sentence.

15

Also, the record demonstrates that the district court properly considered the Guidelines, the § 3553(a) factors, and arguments for mitigation, and that it imposed a substantively reasonable sentence. The court specifically addressed the circumstances of Williams's addiction by recommending that she be placed in a facility with a residential drug treatment program. Although not required to specifically discuss each factor, the court's explanation of its sentence refers to § 3553(a) factors one through five, seven and eight, in response to Williams's mitigation arguments. See Scott, 426 F.3d at 1329-30. In light of these considerations and the record before it, including Williams's immediate return to dealing drugs upon completion of her previous term of incarceration and supervised release for dealing drugs, the court determined that a top-end, Guidelines-range sentence of 135 months was appropriate. See Talley, 431 F3d at 788. Therefore, Williams's sentence is procedurally and substantively reasonable. Accordingly, we conclude that Williams's aggregate 135-month sentence is reasonable.

### III. CONCLUSION

A careful review of the record in this case and the applicable law compels the conclusion that the sentence of the district court is properly calculated under

the Guidelines and is not unreasonable.  Accordingly, for the reasons set out

above, we **AFFIRM**.