[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 10, 2010
JOHN LEY
ACTING CLERK

_____

No. 08-13458
Non-Argument Calendar

_____

D. C. Docket No. 07-14063-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARSHALL LEE MITCHELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 10, 2010)

Before HULL, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Marshall Lee Mitchell appeals his convictions and sentence of 360 months

of imprisonment for possession and conspiracy to possess with intent to distribute five grams or more of cocaine base. 21 U.S.C. §§ 841(a)(1), 846. Mitchell challenges the denial of his motion to suppress; the sufficiency of the evidence; the denial of his pro se motions; the cumulative errors of an alleged discovery violation and improper closing arguments of the prosecutor; his classification as a career offender; and the enhancement of his sentence for possessing five grams or more of cocaine. We affirm Mitchell's convictions, but we reverse the classification of Mitchell as a career offender based on his prior conviction for carrying a concealed firearm. We vacate Mitchell's sentence and we remand for the district court to resentence him.

## I. BACKGROUND

We divide our discussion of the background into three parts. First, we discuss the investigation that led to the charges against Mitchell and his pretrial motions. Second, we discuss Mitchell's trial. Third, we discuss Mitchell's posttrial motions and his sentence.

*A. The Investigation and Charges Against Mitchell and His Pretrial Motions*

On August 16, 2007, Detective Richard Voss of the Sheriff's Office of Okeechobee County, Florida, stopped Lance Jensen for a traffic violation. During the stop, an officer discovered on Jensen a piece of crack cocaine, and Jensen told

2

Detectives Voss and Snyder that he had purchased the cocaine from Mitchell. Jensen gave the officers specific details about previous transactions with Mitchell: at 3:00 a.m. Jensen had purchased crack cocaine from Mitchell for $20; at 5:00 p.m. the previous day, Jensen had bought a piece of crack cocaine from Mitchell for $100; and Jensen had purchased crack cocaine from Mitchell on several other occasions. Jensen stated that the transactions occurred at an apartment that Mitchell rented from another individual, and Jensen guided Voss and Snyder to that apartment. Jensen described the interior of the apartment and he told the officers that a week earlier he had observed a plastic bag of crack cocaine on a dresser.

Detective Voss obtained a warrant to search Mitchell's apartment. The affidavit in support of the warrant described the location of Mitchell's apartment, its distinguishing characteristics, and the evidence sought to be seized. The affidavit recited Jensen's statements about his transactions with Mitchell, his observations in the apartment, and Mitchell's use of the apartment:

> On August 16th, 2007, I, Detective Richard T. Voss, spoke with W/M Lance Christopher Jensen DOB: 10-10-64. Jensen agreed to provide information containing the sell and manufacture of cocaine in the Douglas Park area. Jensen stated large amounts of cocaine could be located in the above-described apartment. Jensen then escorted law enforcement to the area and pointed out the above-described apartment. Jensen stated he witnessed the cocaine inside the apartment on August 15th 2007 at approximately 1700 hours when he

(Jensen) bought a $100.00 piece of crack cocaine from black male Marshall Lee Mitchell DOB: 01-14-59. Jensen also stated on this date (August 16th 2007) he purchased a $20.00 piece of crack cocaine from the same above mentioned apartment and purchased the crack cocaine from the same person, black male Marshall Lee Mitchell. Jensen stated approximately one week before today's date of August 16th 2007, he (Jensen) was inside the apartment and saw approximately one ounce of crack cocaine inside a clear plastic baggy. This crack cocaine was located on top of a dresser inside the room. Jensen stated that Marshall Lee Mitchell rents that apartment and has rented the apartment for some time. Jensen stated he has purchased crack cocaine from the above mention [sic] apartment for a while and Mitchell has sold the crack cocaine to him on those occasions.

As stated earlier, Jensen advised he purchased crack cocaine from Marshall Mitchell as early as 0300 hours on this date (8-16-07).

Voss, accompanied by Corporal Chris Hans and Detective Fred Bradley of the Sheriff's Office of Okeechobee County, and Agent Nick Kent of the Drug Enforcement Agency, executed the warrant. The officers announced their presence, but were forced to break through a reinforcement bar to enter the apartment. Once inside, the officers discovered Mitchell and Latrisha Watkins Hunt in the bathroom, where there was water standing on the floor and cocaine lying in plain view on a counter, the floor, and a shower. Officers removed from the toilet a plastic bag of white powder, eight small plastic bags, a razor, and a glass smoking device, and officers discovered two fragments of a smoking device in the septic tank. Officers also seized from the bathroom a glass measuring cup, a plastic dish and spoons with white residue, and an open box of baking soda. The

4

white powder substance and residue scraped from the spoons tested positive for cocaine.

In other areas of the apartment, officers discovered more drugs, other paraphernalia related to the manufacture and distribution of crack cocaine, and evidence that connected Mitchell to the apartment. Officers discovered a white substance that tested positive for the presence of cocaine on the coffee table, and they seized from different rooms a 100-gram metal weight, a day planner, a jewelry box containing plastic bags, a small knife, and a microwave and razor that had white residue. In a bedroom, officers found briefcases and pieces of mail addressed to Mitchell, a small digital scale under the bed, and clothing for men and women inside the closet. Inside a wallet, officers discovered three receipts for rent paid to Odell Bryant.

The substances and objects inside the apartment tested positive for cocaine base. Forensic testing established that four rock-like objects contained cocaine and weighed 1.6 grams, 2.4 grams, 2.5 grams and .1 gram. Both the microwave and the glass measuring cup contained cocaine residue.

Mitchell and Hunt were indicted for conspiracy to possess with intent to distribute five grams or more of cocaine base, 21 U.S.C. §§ 841(a)(1), 846, and possession with intent to distribute five grams or more of cocaine base, id. §§

5

841(a)(1); 18 U.S.C. § 2. The government later moved to enhance Mitchell's sentence based on his prior convictions for the sale and possession for sale of cocaine and possession of a concealed firearm. Hunt later pleaded guilty to conspiracy to distribute five grams of more of cocaine base. 21 U.S.C. §§ 841(a)(1), 846.

The government moved to introduce evidence about Mitchell's prior drug convictions. See Fed. R. Evid. 404(b). At a hearing, the district court said it might admit the evidence if Mitchell denied knowledge about the drugs. The court said it would rule on the motion "at the appropriate time."

Mitchell moved to suppress the evidence seized from the apartment. Mitchell argued that the warrant was defective and the evidence was not admissible under the good-faith exception of United Staes v Leon, 468 U.S. 897, 104 S. Ct. 3405 (1984). Mitchell contended that the affidavit in support of the warrant failed to address Jensen's reliability or trustworthiness and contained a misleading description of Jensen that insinuated he provided a statement as a concerned citizen.

At a hearing on the motion to suppress, Jensen testified to facts inconsistent with those stated in the affidavit. Jensen testified he had been arrested more than 20 times and he had a problem with drug abuse, but he denied having told Voss

and Snyder about purchasing drugs from Mitchell or about drugs in Mitchell's apartment. Jensen said that he provided an accurate description of the interior of Mitchell's apartment and accompanied officers to that apartment after Voss promised Jensen would not be charged for possession of cocaine, but he identified the incorrect apartment because he believed that Voss would renege. On cross-examination, Jensen testified that he was addicted to drugs and Mitchell had asked him to quit.

Arresting officers testified about Jensen's statement. Voss testified that he had omitted from the affidavit information corroborating Jensen's story, and although he knew Jensen was addicted to crack cocaine, Voss believed Jensen because his statement was consistent with reports by other informants that Mitchell sold cocaine. Both Voss and Snyder testified that the affidavit was based on Jensen's statements incriminating Mitchell, and Snyder said he believed that Jensen had been sober when he gave his statement. Snyder explained that Jensen had been told that his assistance would be reported to the state attorney, and Snyder believed a letter had been mailed to the state attorney.

A magistrate judge recommended that the district court deny Jensen's motion to suppress. The magistrate judge credited the testimonies of the officers. The magistrate judge found that Jensen had provided firsthand information about

7

Mitchell that the officers believed was corroborated by statements of other informants and Voss had portrayed Jensen accurately in the affidavit by describing Jensen's drug purchases. The magistrate judge ruled that the affidavit provided probable cause to issue the search warrant and, in the alternative, the evidence was admissible under the good-faith exception to the exclusionary rule. Mitchell objected and argued that the affidavit did not provide probable cause.

The district court denied the motion to suppress. The district court ruled that the information Jensen provided was sufficient under the totality of the circumstances to provide probable cause to search Mitchell's apartment. The district court determined that Jensen's admissions about illegal drug transactions provided a substantial basis to credit Jensen's statements to the police. The district court ruled, in the alternative, that the officers relied in good faith on the warrant.

Mitchell moved pro se to suppress the evidence and dismiss his indictment. The district court refused to consider the pro se filing because Mitchell was represented by counsel, and the court warned Mitchell that he would be sanctioned for future filings. Counsel later filed Mitchell's motion, which the district court denied. The court ruled that it had already considered Mitchell's challenges to the affidavit and his argument that there were falsehoods in the indictment lacked merit.

8

On the morning of the trial, counsel moved to withdraw at Mitchell's request. Mitchell told the district court that he did not want to represent himself, but he wanted a continuance for his attorney to further investigate and prepare his case. Counsel responded that he was prepared for trial, and the district court denied the motion to withdraw as an improper attempt to continue the trial. The district court asked Mitchell if he wanted to represent himself, and after Mitchell refused, the court ruled that Mitchell's answer "end[ed] the inquiry."

*B. Mitchell's Trial*

The government introduced evidence that connected Mitchell to the apartment and established he used the residence to distribute crack cocaine. Several officers testified about the crack cocaine and drug paraphernalia discovered in Mitchell's apartment. Eddie Neal, the manager of the apartment complex, testified that Mitchell had used the apartment and paid its rent for Odell Bryant. Neal testified that there had been numerous visitors to the apartment and that Mitchell had installed a reinforcement bar on the door. Agent Kent testified that he had observed slabs and individual rocks of crack cocaine inside the apartment and paraphernalia used in the production process. Kent explained that it would have taken an average drug user two weeks to consume the crack cocaine found in Mitchell's apartment.

The second day of trial, Mitchell moved to dismiss counsel. The district court inquired whether Mitchell wanted to represent himself, and Mitchell responded negatively. The court told Mitchell that he was entitled to represent himself and he could move to dismiss counsel and proceed pro se at any time during the trial.

Latrisha Hunt testified that she had lived with Mitchell in the apartment searched by the police. Hunt testified that she was addicted to crack cocaine; Mitchell regularly gave her money to buy crack cocaine and had done so the morning of the search; and she shared the crack cocaine with Mitchell. Hunt stated that she had lied to arresting officers when she claimed the drugs and she had used a day planner officers seized to track money owed both to her and Mitchell for crack cocaine. Hunt testified that other persons had lived in the apartment, but she and Mitchell were the only residents during August 2007. Hunt explained that she intended to smoke some of the crack cocaine, but she planned to sell "[m]ost of what [she] could." Hunt testified that Mitchell alerted her about the search and they ran to the bathroom and tried to dispose of the drugs and some paraphernalia. Mitchell cross-examined Hunt about her drug abuse and a letter she had written accusing Mitchell of having a physical relationship with another woman.

After the state rested, Mitchell moved for a judgment of acquittal, which the

10

district court denied. Mitchell called two witnesses, Tami Sanford and Freda Faison, who testified that people gathered regularly at Mitchell's apartment. Sanford testified that she visited the apartment the morning before the search and she did not observe any crack cocaine. Mitchell testified that, immediately before the search, a drug dealer and his girlfriend had visited the apartment and used the bathroom. Mitchell stated that he did not know how to make crack cocaine, the drug dealer left crack cocaine for Hunt, and officers planted additional crack cocaine in the apartment.

Mitchell moved for the court to prohibit the government from questioning him about a letter that was not disclosed during discovery. In the letter, Mitchell thanked Hunt for claiming ownership of the crack cocaine. The district court denied Mitchell's motion, and the government questioned Mitchell about the letter and his prior convictions for drug offenses. On redirect examination, Mitchell testified that Hunt kept drugs at the apartment, but not in the quantity discovered by police. At the conclusion of the evidence, Mitchell renewed his motion for an acquittal, which the district court denied.

The prosecutor told the jury that Mitchell and Hunt had conspired to possess and possessed more than 5 grams of crack cocaine, which they attempted to destroy before police entered Mitchell's apartment. The prosecutor stated that

11

Mitchell's admissions about prior drug crimes, coupled with evidence that he had tried to dispose of crack cocaine in the apartment, established that Mitchell did not commit a "mistake [when] he had that crack cocaine and [was] with it at the time."

Mitchell argued that the government failed to prove his guilt beyond a reasonable doubt. Mitchell argued that the standard required "proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs." The prosecutor stated that he was not "somehow afraid [of] or timid about" the standard of reasonable doubt, which had been applied in criminal cases "for the last 230 years." The prosecutor told the jury that "every single defendant who has walked into this court and been convicted by a jury like yourself has been convicted beyond a reasonable doubt" and "it's a standard you must apply today."

Mitchell moved for a mistrial and argued that the government committed two reversible errors in its closing argument. First, Mitchell argued that the statements of the prosecutor about reasonable doubt referenced the guilt of other defendants and was prejudicial. Second, Mitchell argued that the prosecutor had treated his prior convictions as substantive evidence of his guilt. The district court denied Mitchell's motion.

The jury found Mitchell guilty of possession and conspiracy to distribute

12

crack cocaine. 21 U.S.C. §§ 841(a)(1), 846. The jury also found that the crimes involved five grams or more of cocaine base. Mitchell requested an extension of ten days to file post-trial motions, and the district court ruled the motions had to be "filed not later than April 18, 200[8]."

*C. Mitchell's Posttrial Motions and His Sentence*

Mitchell filed several post-trial motions pro se. Mitchell moved for a new trial on April 20, 2008, and the district court denied the motion as untimely and without merit. Mitchell also moved to discharge counsel before sentencing, and the district court ruled that Mitchell could argue later that counsel was ineffective.

The presentence investigation report provided a base offense level of 24 and attributed 6.6 grams of cocaine to Mitchell. United States Sentencing Guideline § 2D1.1(a)(3) (Nov. 2007). The report identified Mitchell as a career offender based on Mitchell's prior felony convictions for the sale and possession for sale of cocaine and carrying a concealed firearm. Id. § 4B1.1(b). With a criminal history of VI and an offense level of 37, the report provided a sentencing range of 360 months to life imprisonment.

Mitchell objected to the report, argued that the sentencing range was excessive for the amount of crack cocaine that he had possessed, and requested a sentence between 10 and 20 years of imprisonment. The district court found that

13

Mitchell's history revealed that "nothing [was] going to work," and that Mitchell had expressed no remorse for his crimes. The court sentenced Mitchell to 360 months of imprisonment and eight years of supervised release.

## II. STANDARDS OF REVIEW

On denial of a motion to suppress, we review findings of fact for clear error and the application of law to those facts de novo, and we construe all facts in the light most favorable to the government. United States v. Ramirez, 476 F.3d 1231, 1235–36 (11th Cir. 2007). We also review de novo the denial of a judgment of acquittal, United States v. Browne, 505 F.3d 1229, 1253 (11th Cir. 2007), and the cumulative impact of alleged evidentiary errors, United States v. Hoffman-Vaile, 568 F.3d 1335, 1340 (11th Cir. 2009). The denial of motions to dismiss, for a new trial, and to proceed pro se are reviewed for abuse of discretion. See United States v. Perez-Oliveros, 479 F.3d 779, 782 (11th Cir. 2007); United States v. York, 428 F.3d 1325, 1331 n.8 (11th Cir. 2005); United States v. Teague, 953 F.2d 1525, 1540 (11th Cir. 1992) ("The settled rule is that the defendant seeking to proceed pro se must assert the right to do so prior to the commencement of trial; thereafter, any request to proceed without counsel is committed to the discretion of the trial court."). We review de novo the cumulative impact of alleged errors. Hoffman-Vaile, 568 F.3d at 1340. Objections or arguments that are not raised in the district

14

court are reviewed for plain error. See United States v. Massey, 443 F.3d 814, 818 (11th Cir. 2006).

## III. DISCUSSION

Mitchell raises six issues for our consideration. All fail except Mitchell's challenge to his classification as a career offender. Because of this sentencing error, we vacate Mitchell's sentence and remand for resentencing.

*A. The Evidence Seized from Mitchell's Apartment was Admissible.*

Mitchell argues that the affidavit executed by Voss failed to provide probable cause because Jensen was not reliable and officers failed to corroborate Jensen's allegations of drug activity. Mitchell argues, in the alternative, that the evidence was not admissible under the good-faith exception to the exclusionary rule because the affidavit misrepresented that Jensen provided the information as a concerned citizen. Because we conclude that the affidavit provided probable cause, we need not decide whether the good-faith exception applies.

A search warrant must be supported by probable cause. U.S. Const. Amend. IV. To provide probable cause, the facts included in the affidavit, including any statements about the veracity and knowledge of an informant, must establish that "there is a fair probability that contraband or evidence of a crime will be found" at the place to be searched. Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317,

15

2332 (1983). Because we examine the information in the affidavit in its totality, the veracity and basis of knowledge of an informant "are no longer viewed as independent prerequisites to a finding of probable cause: 'a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'" United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995) (quoting Gates, 462 U.S. at 233, 103 S. Ct. at 2329). An affidavit that recites the statements of an informant can provide a substantial basis for a finding of probable cause because "'an explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles the informant's tip to greater weight than might otherwise be the case.'" United States v. Brundidge, 170 F.3d 1350, 1353 (11th Cir. 1999) (quoting Gates, 462 U.S. at 234, 103 S. Ct. at 2330). Although independent corroboration aids in assessing the informant's veracity, it is not required in every case. Id. The tip is corroborated when there exists a disincentive for the informant to lie. Foree, 43 F.3d at 1576 (holding that a tip is corroborated when given in "circumstances under which [the informant] is unlikely to lie" because a falsehood "would likely be discovered in short order and favors falsely curried would dissipate rapidly.").

The affidavit recited facts sufficient to provide probable cause for the search

warrant. The affidavit recited Jensen's statements that he had purchased crack cocaine from Mitchell on multiple occasions at his apartment and there was incriminating evidence inside the apartment. Jensen guided the officers to the apartment and provided the information in exchange for the promise that his cooperation would be made known to prosecutors. The district court did not clearly err in finding that the information Jensen gave the officers evidenced his knowledge about Mitchell's drug trade and the circumstances under which Jensen gave the statement corroborated his veracity. See Brundidge, 170 F.3d at 1353; Foree, 43 F.3d at 1576. The facts, taken in the light most favorable to the government, also support the finding that Jensen's testimony during the suppression hearing was incredible. The district court did not err by denying Jensen's motion to suppress.

*B. Sufficient Evidence Establishes That Mitchell Conspired to Possess and Possessed More Than 5 Grams of Crack Cocaine.*

Substantial evidence supports Mitchell's convictions. Police discovered Mitchell literally surrounded by incriminating evidence. Officers seized 6.6 grams of crack cocaine and paraphernalia used to produce and resell the illegal substance. Hunt testified that Mitchell gave her money to purchase the crack cocaine discovered in the apartment and Hunt planned to sell "most" of the cocaine. When Mitchell disclaimed any knowledge about the drugs, he risked the chance that the

17

jury would use his testimony as substantive evidence of his guilt. See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995). The district court did not err by denying Mitchell's motions for a judgment of acquittal.

*C. The District Court Did Not Abuse Its Discretion by Denying Mitchell's Pro Se Motions.*

Mitchell argues that the district court failed to consider his pro se motions, but we disagree. Mitchell moved to suppress evidence and for a new trial, but the district court had already considered his challenges to the evidence and ruled that his post-trial motion was untimely. Mitchell argues that the refusal to consider his motion to discharge his counsel denied him the opportunity to represent himself, but Mitchell told the district court repeatedly that he did not wish to proceed pro se. Because Mitchell failed to "clearly and unequivocally assert the desire to represent himself," Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990), the district court was not required to inquire further about Mitchell's interest in self-representation. Mitchell was entitled to the appointment of competent counsel, not the counsel of his choice. See Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692, 1697 (1988); United States v. Garey, 540 F.3d 1253, 1263 (11th Cir. 2008).

*D. There Was No Cumulative Error.*

Mitchell argues that he is entitled to a new trial because he was prejudiced

18

by the cumulative effect of two alleged errors during closing arguments and an alleged violation of Rule of Criminal Procedure 16, but again we disagree. First, Mitchell erroneously complains that the government argued that Mitchell's prior convictions were substantive evidence of his guilt, but the government in fact argued that those convictions established Mitchell knew about and intended to distribute the crack cocaine in the apartment. See Fed. R. Evid. 404(b). Second, Mitchell complains that the government insinuated he was guilty by likening him to other convicts. The record establishes that the comment was made in response to Mitchell's statements about reasonable doubt, see United States v. Sarmiento, 744 F.2d 755, 765 (11th Cir. 1984), and the district court eradicated any potential error by correctly instructing the jury about the limited purpose of Mitchell's prior convictions and the burden of the government to prove Mitchell's guilt, see United States v. Hansen, 262 F.3d 1217, 1250 (11th Cir. 2001). Third, Mitchell complains for the first time on appeal that he was prejudiced when the government failed to disclose during discovery a letter Mitchell wrote Hunt thanking her for claiming the crack cocaine, but the failure to disclose the letter did not affect Mitchell's substantial rights. Mitchell had written the letter and knew its contents, and the letter was consistent with his argument that Hunt later had changed her story falsely to blame Mitchell for the crack cocaine. See United States v. Chastain, 198

19

F.3d 1338, 1348 (11th Cir. 1999). Because Mitchell has failed to establish any reversible error, he cannot establish cumulative error. Hoffman-Vaile, 568 F.3d at 1342.

*E. The District Court Erred By Sentencing Mitchell As a Career Offender.*

Mitchell argues for the first time on appeal that the district court erred by treating his prior conviction for carrying a concealed firearm as a crime of violence. After Mitchell was sentenced, we held that a conviction for carrying a concealed firearm is not a crime of violence, United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008), and the government concedes the use of Mitchell's conviction was error. Although the government argues that Mitchell had an unscored conviction for the sale of cocaine that could be used to enhance his sentence, we will not allow the government to offer evidence to support an enhancement that was not offered during the initial sentencing hearing. United States v. Canty, 570 F.3d 1251, 1256–57 (11th Cir. 2009). In any event, Mitchell's conviction in 1990 is too remote to be used to enhance his sentence. See U.S.S.G. § 4A1.2(e)(1). We vacate the order sentencing Mitchell as a career offender and remand for the district court to recalculate Mitchell's sentence without the firearm offense.

*F. The District Court Did Not Plainly Err When It Sentenced Mitchell Using the Quantity of Drugs Found by the Jury.*

Mitchell argues for the first time on appeal that the district court was not bound to the finding of the jury about the quantity of drugs involved in his crimes, but we disagree. The jury determined that Mitchell was responsible for more than 5 grams of crack cocaine, and the evidence supports that finding. Although Mitchell argues that the jury should have determined what amount Mitchell intended to distribute, he cites no caselaw that would require such a special verdict. See United States v. Acevedo, 285 F.3d 1010, 1011–12 (11th Cir. 2002). Mitchell was responsible for all the crack cocaine purchased in the scope of the conspiracy, whether the drugs were intended for resale or personal use. See United States v. Antonietti, 86 F.3d 206, 209–10 (11th Cir. 1996). The district court did not err, plainly or otherwise, by relying on the jury's finding.

## IV. CONCLUSION

We **AFFIRM** Mitchell's convictions. We **VACATE** Mitchell's sentence, and we **REMAND** for resentencing.

21