[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13728

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 4, 2011
JOHN LEY
CLERK

D. C. Docket No. 09-00015-CR-3-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARK HENRY PANTLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(April 4, 2011)

Before CARNES and PRYOR, Circuit Judges, and SEITZ,[*] District Judge.

PER CURIAM:

_____

[*] Honorable Patricia A. Seitz, United States District Judge for the Southern District of
Florida, sitting by designation.

Mark Henry Pantle was sentenced to 120 months imprisonment following his conviction for knowingly possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). His base offense level was set at 24 under U.S.S.G. § 2K2.1(a)(2) based on the district court's determination that he had two prior convictions for crimes of violence as defined by U.S.S.G. § 4B1.2(a). Those two prior convictions were for felony battery in violation of Fla. Stat. § 784.03 in 2006, and for attempted first degree assault in violation of Ala. Code §§ 13A-6-20(a) and 13A-4-2(a) in 1997.

In addition to his base offense level of 24, Pantle received a two-level enhancement because the firearm he possessed was stolen and a four-level enhancement because he had used or possessed a firearm in connection with his 1997 Alabama conviction for attempted first degree assault. See U.S.S.G. §§ 2K2.1(b)(4)(A) & 2K2.1(b)(6). Based on his adjusted offense level of 30 and his criminal history category of VI, Pantle's guidelines range was 168 to 210 months imprisonment. However, because the statutory maximum term of 120 months imprisonment was less than his applicable guidelines range, 120 months became the guidelines sentence under U.S.S.G. § 5G1.1(a).

In explaining Pantle's sentence, the district court stated that it had reviewed the 18 U.S.C. § 3553(a) factors and the guidelines and indicated that it thought 120

2

months was not enough. Specifically, the court stated:

> And while I'm not willing to find that this sentence is reasonable, it is the maximum permitted, and therefore, I do think that it will serve the sentencing purpose and meet the general goals of punishment and hopefully deter anyone else from similar criminal conduct.

Pantle contends that the district court erred in setting his base offense level at 24 based on his prior Florida and Alabama convictions because he believes that neither conviction qualifies as a "crime of violence" within the meaning of § 2K2.1(a).

I.

Generally, we review de novo the issue of whether a defendant's prior conviction constitutes a crime of violence under the sentencing guidelines. United States v. Llanos-Agostadero, 486 F.3d 1194, 1196 (11th Cir. 2007). But because Pantle failed to object to his prior convictions being considered "crimes of violence," we review that aspect of the sentence calculation only for plain error. See United States v. Camacho-Ibarquen, 410 F.3d 1307, 1315 (11th Cir. 2005).

For this Court to correct an error under plain error review, "(1) there must be error; (2) the error must be plain; (3) the error must affect the appellant's substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings." United States v. Gallego, 247 F.3d 1191, 1196 (11th Cir. 2001) (quotation marks and alteration omitted). "In order to

3

be plain enough for the plain error rule, an asserted error must be clear from the plain meaning of a statute or constitutional provision, or from a holding of the Supreme Court or this Court." United States v. Rodriguez, 627 F.3d 1372, 1381 (11th Cir. 2010). But it is enough that the error was plainly established under the law at the time of appellate review. United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005)

## II.

A conviction under § 922(g)(1) results in a base offense level of 14, but if the defendant already has two prior convictions for crimes of violence, his applicable base offense level is increased to 24. U.S.S.G. §§ 2K2.1(a)(2) & (6). The term "crime of violence" under § 2K2.1 "has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." U.S.S.G. § 2K2.1, cmt. n.1. Under § 4B1.2(a), a "crime of violence" is defined as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). A "crime of violence" includes the attempt to commit an

4

offense that would, if completed, be a crime of violence.  U.S.S.G. § 4B1.2, cmt. n.1.

"The first step of the 'crime of violence' analysis is to identify the specific crime at issue," generally using a categorical approach.  United States v. Alexander, 609 F.3d 1250, 1253 (11th Cir. 2010).  "However, when the law under which a defendant has been convicted contains different statutory phrases—some of which [qualify as "crimes of violence"] and some of which do not—the judgment is ambiguous and we apply a 'modified categorical approach.'"  United States v. Palomino Garcia, 606 F.3d 1317, 1336 (11th Cir. 2010) (citing Johnson v. United States, ___ U.S. ___, 130 S. Ct. 1265, 1273 (2010)).  Under the modified categorical approach, the district court:

> may determine which statutory phrase was the basis for the conviction by consulting a narrow universe of "Shepard[1] documents" that includes any charging documents, the written plea agreement, the transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.

Id. at 1337.  In cases such as this one where a prior conviction is the result of a guilty plea, the question is whether the court documents establish that the defendant "necessarily admitted" the elements of a predicate offense through his plea.  Shepard, 544 U.S. at 16, 24, 125 S. Ct. at 1257, 1262.

---

[1] Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005).

5

After identifying the crime, "[courts] then address whether it is a 'crime of violence.'" Alexander, 609 F.3d at 1254. A crime is covered by the "use clause" of U.S.S.G. § 4B1.2(a)(1) if the offense has as an element the use of violent force. Johnson, ___ U.S. at ___, 130 S. Ct. at 1271. Alternatively, a crime is covered by the "residual clause" of U.S.S.G. § 4B1.2(a)(2) if the crime "presents a serious potential risk of physical injury to another and is similar in kind to burglary, arson, extortion, and crimes involving the use of explosives, the crimes enumerated in U.S.S.G. § 4B1.2." Alexander, 609 F.3d at 1259.

## III.

Pantle first contends that under Johnson, his conviction for felony battery under Fla. Stat. § 784.03 does not categorically qualify as a "crime of violence" under § 2K2.1(a). In that case the Supreme Court recently held that the Florida felony offense of battery is not categorically a "violent felony" under the "use clause" of the ACCA. Johnson, ___ U.S. at ___, 130 S. Ct. at 1270–72 (holding that the least of the acts sufficient to support a conviction under Fla. Stat. § 784.03—actually and intentionally touching—was not a "violent felony"); see also United States v. Rainey, 362 F.3d 733, 734 (11th Cir. 2004) (recognizing that the definition of a "crime of violence" under the career offender guideline is "virtually identical" to the definition of a "violent felony" under the Armed Career Criminal

6

Act, 18 U.S.C. § 924(e)). Consequently, when nothing in the Shepard documents before the trial court shows that a defendant's prior conviction under Fla. Stat. § 784.03 was based on greater force than an actual and intentional touching, the prior conviction does not constitute a violent felony under 18 U.S.C. § 924(e)(2)(B)(i). Johnson, ___ U.S. at ___, 130 S. Ct. at 1268–74.

Pantle also contends that the district court plainly erred by enhancing his base offense level based on his 1997 Alabama conviction for attempted first degree assault. Under Alabama law, a person commits the crime of assault in the first degree if:

(1) With intent to cause serious physical injury to another person, he causes serious physical injury to any person by means of a deadly weapon or a dangerous instrument; or

(2) With intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such an injury to any person; or

(3) Under circumstances manifesting extreme indifference to the value of human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to any person; or

(4) In the course of and in furtherance of the commission or attempted commission of arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree or any other felony clearly dangerous to human life, or of immediate flight therefrom, he causes a serious physical injury to another person; or

7

(5) While driving under the influence of alcohol or a controlled substance or any combination thereof . . . he causes serious bodily injury to the person of another with a motor vehicle.

Ala. Code § 13A-6-20(a). Alabama law also provides that "[a] person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense." Ala. Code § 13A-4-2(a).

Pantle points out that a conviction for attempted first degree assault under Alabama law is possible under any of the five enumerated paragraphs of Ala. Code § 13A-6-20(a), including § 13A-6-20(a)(3), which permits a conviction when the defendant acts "recklessly" instead of intentionally. He argues that a reckless conduct crime cannot be a crime of violence within the meaning of U.S.S.G. § 4B1.2(a). See Palomino Garcia, 606 F.3d at 1336.

Pantle also argues that a conviction under § 13A-6-20(a)(5) cannot be considered a crime of violence because that paragraph of the statute does not require proof of any mental state. In Leocal v. Ashcroft, 543 U.S. 1, 125 S.Ct. 377 (2004), the Supreme Court held that a subsection of Florida's drunk driving statute, which made it a crime to cause serious bodily injury while driving under the influence of alcohol, was not a crime of violence. Id. at 9–10, 125 S.Ct. at 382–83. The Court reasoned that the drunk driving offense did not require an offender

8

convicted under that subsection to "actively employ" physical force because it did not require proof of any mental state. Id. at 9, 125 S.Ct. at 382. Furthermore, the Supreme Court specifically identified Ala. Code §13A-6-20(a)(5) as a statute like Florida's that did not require proof of any mental state. Id. at 8 n.5, 125 S.Ct. at 382 n.5.

IV.

We need not decide whether Pantle is correct about his Alabama and Florida convictions not being crimes of violence. Even if we assume that the district court erred in counting those convictions as crimes of violence, and even if we assume that any error in doing so was plain, Pantle's claim still fails because he cannot satisfy the third prong of the plain error standard. (Because he fails the third prong, we need not address the fourth.)

Under the third prong of the plain error analysis, "[i]t is the defendant rather than the [g]overnment who bears the burden of persuasion with respect to prejudice." Rodriguez, 398 F.3d at 1299. And in order to meet that burden, a defendant must show that the claimed error affected his substantial rights, which "almost always requires that the error must have affected the outcome of the district court proceedings." Id. (quotation marks omitted). A defendant's burden under the plain error standard to show prejudice is "anything but easy"— "the

9

burden truly is on the defendant to show that the error actually did make a difference." Id. at 1299–1300. As we explained in Rodriguez:

> [I]f it is equally plausible that the error worked in favor of the defense, the defendant loses; if the effect of the error is uncertain so that we do not know which, if either, side it helped the defendant loses. Where errors could have cut either way and uncertainty exists, the burden is the decisive factor in the third prong of the plain error test, and the burden is on the defendant.

Id. at 1300. Here, as in Rodriguez, the burden is the decisive factor, and Pantle has not carried it.

Even assuming away both the Florida conviction and the Alabama conviction, Pantle has still failed to meet his burden of showing that there is a reasonable probability that the district court would have given him a shorter sentence without the enhanced base offense level based on his two prior convictions. See Rodriguez, 398 F.3d at 1301. Pantle relies on United States v. Antonietti, 86 F.3d 206 (11th Cir. 1996), to establish that his substantial rights were affected, but that reliance is misplaced. In Antonietti we did hold that the district court had plainly erred by erroneously calculating the defendants' base offense levels and that the defendants' substantial rights were affected as a result of the error. Id. at 208–09. However, the defendants in that case were sentenced pursuant to the mandatory sentencing guidelines. When the sentencing guidelines were mandatory, there was a greater likelihood that a guidelines error affected the

10

sentence that was imposed. Thus, the holding in Antonietti was that the error affected the defendants' substantial rights because they would not have been eligible for the same sentence had the district court correctly calculated their base offense levels. But United States v. Booker, 543 U.S. 220, 267, 125 S.Ct. 738, 769 (2005), changed that.

In Pantle's case, the maximum sentence permitted by statute is 120 months. Because his guidelines range exceeded the statutory maximum sentence, the statutory maximum became his guidelines sentence. If Pantle were to be resentenced without counting either prior conviction as a crime of violence, his base offense level would be 14 (instead of 24). See U.S.S.G. § 2K2.1(a)(6). Applying the same upward adjustments as before, Pantle's adjusted offense level would be 20 (instead of 30). Combined with his 23 criminal history points, which yield a criminal history category of VI, Pantle's guidelines range would be 70 to 87 months (instead of 168 to 210 months). Although his guidelines range would be different, he could still receive the same 120-month sentence because § 3553(a) would permit the district court to vary upward to that sentence. Unlike the appellants in Antonietti, we do not know that Pantle would not have received the same sentence without the (assumed) error.

To put it in terms of the third prong standard, Pantle has not demonstrated

11

that there is a reasonable probability that he would have received a lower sentence if the two prior convictions had not been counted as crimes of violence. See Rodriguez, 398 F.3d at 1299. We can go further than that. In fact, the record actually establishes a reasonable probability that Pantle would not have received a lower sentence. After all, the district court expressly indicated that it believed the 120-month sentence was not long enough but could not go higher because that was the statutory maximum. Having failed to carry his burden of showing a reasonable probability of a different result, Pantle has not established that the error about which he complains can be corrected under the plain error rule.

**AFFIRMED.**