[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10291
Non-Argument Calendar

_____

D.C. Docket No. 3:10-cr-00017-MMH-JRK-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY JEROME TERRY,
a.k.a. Flip,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 6, 2012)

Before BARKETT, PRYOR, and FAY, Circuit Judges.

PER CURIAM:

Anthony Jerome Terry appeals his 198-month total sentence, imposed after he pled guilty to possession with intent to distribute cocaine and possession of a firearm in furtherance of a drug trafficking crime.  He argues that the district court erred in finding that his prior Florida conviction for lewd and lascivious battery on a minor constituted a crime of violence sufficient to support his career-offender enhancement.  For the reasons set forth below, we affirm Terry's sentence.

I.

Terry pled guilty to possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count Three"), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) ("Count Four").  His presentence investigation report ("PSI") indicated that, before committing the instant offenses, Terry had sustained Florida convictions for lewd or lascivious battery on a minor and for sale or delivery of cocaine.  Regarding the battery conviction, the PSI stated that, in 2002, Terry went into a 14-year-old's bedroom and forced her to have sex with him.  Further, it stated that a medical evaluation of the victim showed that she had "tearing, abrasion[s,] and lacerations near her vagina."

The PSI indicated that Terry qualified as a career offender under U.S.S.G. § 4B1.1, resulting in an offense level of 32, because he had two prior convictions

2

for either a "controlled substance offense" or a "crime of violence," specifically, his prior Florida cocaine and battery convictions. Terry received a 3-level reduction for acceptance of responsibility, under U.S.S.G. § 3E1.1(a) and (b), resulting in a total offense level of a 29. Terry's classification as a career offender placed him into a criminal history category VI. As to the firearm offense under § 924(c), Terry was subject to a mandatory minimum 60-month sentence, to run consecutively to any other term of imprisonment. Because Terry was a career offender with a conviction under § 924(c), the applicable guideline range increased to 262 to 327 months under U.S.S.G. § 4B1.1(c)(2) and (c)(3).

Terry objected to the PSI on the ground that his Florida conviction for lewd and lascivious battery, in violation of Fla. Stat. § 800.04(4), was not a proper predicate for the career-offender enhancement because it was not a crime of violence under the Sentencing Guidelines. He asserted that *United States v. Harris*, 608 F.3d 1222 (11th Cir. 2010) held that a Florida conviction for sexual battery of a child under the age of 16 does not fall within the residual clause of the Armed Career Criminal Act ("ACCA") because it imposes strict liability and does not necessarily involve "purposeful, violent, and aggressive conduct." As such, his prior battery conviction, which is a strict liability offense, does not qualify as a crime of violence because it does not require specific intent to use force against

3

another person.  Further, regarding the circumstances of his prior conviction, Terry objected to the PSI's factual assertion that he "went into the bedroom of his girlfriend's child and forced her to have sexual intercourse."

Terry filed a sentencing memorandum, reiterating that he did not qualify as a career offender.  He argued that, under our "categorical approach" to review, the district court should not consider anything other than the fact of conviction and the elements of the offense.  Moreover, even under the "modified categorical approach," he does not qualify as a career offender because he never admitted to any allegations concerning forcible sex during his state plea proceedings.

At the sentencing hearing, Terry argued that, although our decision in *Harris* "seemingly rais[ed] an invitation" to consider the specifics of the underlying offense, the Supreme Court has established that, if the statute may be reviewed under the categorical approach based only on the judgment and elements of the offense, there is no need to consider any further evidence or documents.

However, he argued, even applying the modified categorical approach, the court was not permitted to consider "hearsay police reports" under *Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).  He asserted that the government relied on statements that were made during Terry's state plea hearing, suggesting that the offense had involved violence, but those statements

4

merely recited allegations from the police report.  Terry's public defender in that proceeding did not object to the factual basis for his plea, but only for the purposes of his state plea, and as such, he argued that his interaction with the state court was insufficient to constitute an admission to any violent acts.

The government then introduced several documents into evidence, including copies of the state information and judgment, Terry's guilty plea, and the plea hearing transcript.  During the state plea hearing, the prosecutor described the factual basis for the plea, stating:

> []Terry, did engage in sexual activity with the victim, a person 12 years of age or older but less than 16 years of age, by placing his penis in or on her vagina.
>
> She was at the time 14 years old.  Victim reported that she was, in fact, raped. There was a CPT medical evaluation done on this victim, and she did have tears and abrasions and lacerations near her vagina to corroborate that there had been some type of penetration to her. And there was also semen removed from her vagina, and that was sent off to Florida Department of Law Enforcement to be tested.

The state court asked Terry's defense counsel if he had any objection to the statement of facts, and counsel responded, "Not for the purposes of this plea."

Terry argued that, unlike the Florida battery statute at issue in *United States v. Johnson*, __ U.S. __, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010), which could be violated in numerous ways, including touching, Terry was charged only with

5

sexual activity, not sexual battery.  Thus, the victim's report of being raped was not necessary for plea purposes.

As a preliminary matter, the court rejected Terry's contention that it was required to follow the categorical approach.  Instead, *Shepard* and *Johnson* instruct that, if the categorical approach does not resolve the issue, the court may then turn to the modified categorical approach, under which the court must determine whether the government's *Shepard*-approved documents establish that the "defendant's conduct involved purposeful, violence, and aggressive conduct." The court noted that, in *Harris*, unlike the instant case, there was insufficient evidence for the court to make that determination.  Here, the government's *Shepard*-approved documents, including the relevant portions of the state plea hearing, were sufficient to establish that Terry's prior conviction fell within the definition of a crime of violence under § 4B1.1 and § 4B1.2.  The court found it relevant that Terry had committed a forcible sex offense, which is specifically enumerated in the application notes to § 4B1.2.  However, ultimately, the court applied the modified categorical approach in finding that Terry's offense fell within the career offender guideline's residual clause, as an offense involving conduct that presents a serious potential risk of physical injury to another, and, as an offense involving purposeful, violent, and aggressive conduct.

6

The court adopted the guideline calculations as contained in the PSI, and noted that Terry faced a guideline range of 262 to 327 months' imprisonment. Terry moved for a downward variance based on the 18 U.S.C. § 3553(a) sentencing factors, including his efforts to assist the government.

In consideration of Terry's attempts to cooperate with the government, the court granted the downward variance and imposed a 198-month total sentence, consisting of 138 months' imprisonment as to Count Three and a consecutive 60-month sentence as to Count Four.

## II.

We review *de novo* whether a particular conviction is a crime of violence under the Sentencing Guidelines. *United States v. Lockley*, 632 F.3d 1238, 1240 (11th Cir.), *cert. denied*, 132 S.Ct. 257 (2011).

Pursuant to § 4B1.1, a defendant is considered a "career offender" and subject to an enhanced sentence if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).  The term "crime of violence" is defined in the Sentencing

7

Guidelines as any offense punishable by more than one year of imprisonment that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosive, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

We have noted that, while not the same, the definitions of a crime of violence in § 4B1.2 and a violent felony in the ACCA are "virtually identical." *United States v. Archer*, 531 F.3d 1347, 1350 n.1 (11th Cir. 2008).  Accordingly, decisions analyzing whether an offense is a "violent felony" under the ACCA provide guidance when determining whether an offense qualifies as a "crime of violence" under the career offender guideline.  *United States v. Alexander*, 609 F.3d 1250, 1253 (11th Cir. 2010), *cert. denied*, 131 S.Ct. 1783 (2011).

"Under § 4B1.2 of the guidelines, any state or federal offense that is punishable by more than one year of imprisonment can be a crime of violence if it fits within one of three categories." *United States v. Chitwood*, 676 F.3d 971, 975 (11th Cir. 2012).  The first category includes crimes that have "as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a)(1).  The second category includes the enumerated

8

crimes of "burglary of a dwelling, arson, or extortion" and those involving the "use of explosives." § 4B1.2(a)(2). The third category, sometimes referred to as residual clause crimes, includes those that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another." *Id.*; *Chitwood*, 676 F.3d at 975. In addition, the commentary to the Sentencing Guidelines elaborates that a crime of violence also includes several specific crimes, including forcible sex offenses. *See* U.S.S.G. § 4B1.2, comment. (n.1).

There are two ways in which we analyze whether a crime can fall within the residual clause of § 4B1.2(a)(2). *Chitwood*, 676 F.3d at 975. The first is the categorical approach, under which the court considers whether the elements of the offense are of the type that would justify its inclusion in the definition of a crime of violence, without inquiring into the specific conduct of the particular offender. *Id.* at 975-76. The second way to identify the specific offense at issue is an exception to the categorical approach, referred to as the "modified categorical approach." *See United States v. Pantle*, 637 F.3d 1172, 1175 (11th Cir.), *cert. denied*, 132 S.Ct. 1091 (2012). Courts may apply the modified categorical approach "when the law under which a defendant has been convicted contains different statutory phrases—some of which qualify as crimes of violence and some of which do not." *Id.* (quotation and alteration omitted); *Chitwood*, 676 F.3d at

9

976. Moreover, when applying the modified categorical approach, sentencing courts, under *Shepard*, are "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *See United States v. Palomino Garcia*, 606 F.3d 1317, 1328 (11th Cir. 2010) (applying U.S.S.G. § 2L1.2).

The Supreme Court, in *Johnson*, held that, for a prior conviction to qualify as a violent felony under the elements clause of the ACCA, the offense must have an element of "violent force" against the person of another. *Johnson*, 559 U.S. at __, 130 S.Ct. at 1271. The Court defined violent force as "force capable of causing physical pain or injury to another person." *Id.* In so doing, the Court rejected the established common-law meaning of "force," which included even the slightest offensive touching, because such an interpretation did not fit the statutory context. *Id.* at __, 130 S.Ct. at 1270-73.

In *Owens*, we applied *Johnson* to analyze whether the offenses of second degree rape and second degree sodomy under Alabama law qualified as violent felonies under the elements clause. *Owens,* 672 F.3d at 970-72. Applying the categorical approach, we noted that "forcible compulsion" was not required to violate the second degree rape and second degree sodomy statutes, and the

10

physical requirement of the statutes required only slight penetration with a non-consenting victim, due to age or mental incapacity. *Id.* at 971. However, while excluding a battery conviction from satisfying the elements clause as a categorical matter, the *Johnson* decision left open the possibility that a battery conviction may satisfy the elements clause under the modified categorical approach by looking to the record of the conviction to determine if violent force was an element. *See Johnson*, 559 U.S. at __, 130 S.Ct. at 1273. However, the "absence of records" often frustrates the application of the modified categorical approach. *Id.*

Terry was convicted under the 2002 version of Fla. Stat. § 800.04(4), which defined lewd or lascivious battery on a minor as:

A person who:

(a) Engages in sexual activity with a person 12 years of age or older but less than 16 years of age; or

(b) Encourages, forces, or entices any person less than 16 years of age to engage in sadomasochistic abuse, sexual bestiality, prostitution, or any other act involving sexual activity.

Fla.Stat. § 800.04(4) (2000). Under Fla. Stat. § 800.04(2) and (3), the victim's consent and the perpetrator's ignorance of the victim's age are not defenses.

In *Harris*, we addressed whether a prior version of the same statute, Fla. Stat. § 800.04(3)(1996), constituted a violent felony under the ACCA's residual

11

clause. *Harris*, 608 F.3d at 1225-27.  The 1996 version of the statute stated that "a person who [c]ommits an act defined as sexual battery under [Fla. Stat. §] 794.011(1)(h) upon any child under the age of 16 years . . . is guilty of a felony of the second degree."  Fla. Stat. § 800.04(3) (1996).  Sexual battery meant "oral, anal, or vaginal penetration by, or union with, the sexual organ of another." *Harris*, 608 F.3d at 1225.  We employed the categorical approach to determine how offenses under that statute ordinarily would be committed. *Id.* at 1227-29.  In doing so, we noted, "The proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *Id.* at 1228.  The risk posed must be similar in kind and degree to the risks posed by the enumerated crimes. *Id.* at 1227 (quotation and alteration omitted).  Specifically, we ask whether the conduct at issue is "purposeful, violent and aggressive," or whether "it is a more passive crime of inaction." *Id.* (quotation omitted).

Using the categorical approach, we determined that sexual battery of a minor always posed a substantial risk of physical injury. *Id.* at 1230.  We noted that the Florida statute at issue "cover[ed] a wide array of conduct," imposing strict liability for some violations, but also covering "conduct that is undoubtedly intentional or purposeful." *Id.* at 1332.  Nevertheless, we held that, as a strict

12

liability offense that covered both violent and non-violent conduct, the Florida statute was not similar in kind to the enumerated offenses to constitute a crime of violence under the residual clause. *Id.* at 1230-33. In reaching this holding, we emphasized that we had considered the statute categorically, and "without further specifics" about the facts of the offense. *Id.* at 1232-33.

The district court did not err in finding that, under the modified categorical approach, Terry's prior conviction for lewd and lascivious battery on a minor, under § 800.04(4), constituted a crime of violence sufficient to support his career-offender enhancement. Terry correctly notes that, under the categorical approach, we have held that a prior version of the same offense did not qualify as a crime of violence. *See Harris*, 608 F.3d at 1228-33. The district court, however, was permitted to apply the modified categorical approach because Terry's statute of conviction, § 800.04(4), contains different statutory phrases—some of which that qualify as crimes of violence and some of which do not. *See Pantle*, 637 F.3d at 1175; *Chitwood*, 676 F.3d at 976. In fact, in *Harris*, we stated that Florida's lewd and lascivious battery statute can impose strict liability, but it can also criminalize intentional conduct. *Harris*, 608 F.3d at 1232-33. Moreover, we indicated that we had applied the categorical approach because we lacked specifics regarding the circumstances underlying the prior conviction. *See id.* at 1233 (holding that, "a

13

violation of Fla. Stat. § 800.04(3)(1996) generally—*without further specifics*—is not a crime of violence") (emphasis added).

Unlike in *Harris*, the district court here had access to "specifics" regarding Terry's prior conviction, beyond merely the statutory language and charging document. The government submitted a transcript of Terry's plea hearing, a *Shepard*-approved document, showing that he agreed to the state's factual basis for his plea. *See Palomino Garcia*, 606 F.3d at 1328. Specifically, the state prosecutor asserted that the 14-year-old victim had reported being raped and a medical evaluation corroborated her report, showing that she had tears, abrasions, and lacerations near her vagina. Terry argues that he agreed to the factual basis for his plea in state court because he believed the guilty plea to be in his best interest, not because he committed any forcible acts. Nonetheless, the district court was permitted to rely on the plea hearing transcript, under the modified categorical approach, in determining whether Terry's prior offense constituted a crime of violence. *See Palomino Garcia*, 606 F.3d at 1328. The victim's report that she was raped and the corroborating medical evidence supported the court's determination that Terry's offense involved conduct that was "purposeful, violent, and aggressive," as opposed to passive conduct that was subject to strict liability. *See Harris*, 608 F.3d at 1227.

14

Terry's reliance on *Owens* is unavailing because *Owens* involved our review of Alabama's second degree rape and second degree sodomy statutes, under the categorical approach, to determine if those statutes satisfied the ACCA's "elements clause." *See Owens*, 672 F.3d at 970-972. Even if Terry's statute of conviction, as a categorical matter, fails to satisfy the elements clause of the career offender guideline, *Owens* did not preclude the district court from employing the modified categorical approach to determine whether Terry's prior offense satisfied the career offender's residual clause. *See Johnson*, 559 U.S. at __, 130 S.Ct. at 1273. Both *Owens* and *Harris* involved statutory review under the categorical approach, but here, the district court properly found that, because it had further specifics regarding Terry's conduct, it was permitted to apply the modified categorical approach in finding that his prior conviction qualified as a crime of violence under § 4B1.2(a)(2)'s residual clause. In so doing, the district court did not err in determining that Terry's conduct of raping the 14-year-old victim, such that she had tears and abrasions near her vagina, involved purposeful, violent, and aggressive conduct.

For the foregoing reasons, we affirm Terry's sentence.

**AFFIRMED.**

15