[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10432

_____

D.C. Docket No. 1:12-cr-20156-UU-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANNETTE TERESITA TRUJILLO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 31, 2014)

Before ANDERSON and GILMAN,[*] Circuit Judges, and JOHNSON,[**] District
Judge.

_____

[*] Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by
designation.

[**] Honorable Inge Prytz Johnson, United States District Judge for the Northern District of
Alabama, sitting by designation.

PER CURIAM:

Annette Trujillo appeals her conviction for bank fraud and wire fraud. Trujillo was charged with bank fraud, wire fraud, conspiracy to commit to both, and obstruction of justice in connection with two real estate closings she facilitated in 2007. A jury found Trujillo guilty of bank and wire fraud, and the district court sentenced her to sixty-five concurrent months' imprisonment followed by three years of supervised release. On appeal, Trujillo contends that the district court committed the following errors: (1) allowing the government to introduce two prejudicial newspaper articles, (2) refusing to issue a jury instruction on Trujillo's theory of defense and urging the Government to request a deliberate-ignorance instruction, (3) denying Trujillo's motion for judgment of acquittal, and (4) considering three uncharged transactions as relevant conduct in calculating the total fraud-loss amount. For the reasons discussed below, we affirm the judgment of the district court.

I.    ADMISSION OF NEWSPAPER ARTICLES

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Dortch*, 696 F.3d 1104, 1110 (11th Cir. 2012). Hearsay is defined as an out-of-court statement admitted for the truth of the matter stated therein. FED. R. EVID. 801(c). Generally, an out-of-court statement admitted to show its effect on the listener is not hearsay. *United States v. Cruz*, 805 F.2d 1464, 1478 (11th Cir.

2

1986). Moreover, a district court's evidentiary-ruling error warrants reversal only if "there is a reasonable likelihood that it affected the defendant's substantial rights." *United States v. Langford*, 647 F.3d 1309, 1323 (11th Cir. 2011). In other words, "[n]o reversal will result if sufficient evidence uninfected by any error supports the verdict, and the error did not have a substantial influence on the outcome of the case." *Id.* (quoting *United States v. Khanani*, 502 F.3d 1281, 1292 (11th Cir. 2007)). The district court admitted two emails from Appellant. In the first email, Appellant forwarded from her work address to her personal address an article concerning the criminalization of mortgage fraud in Florida. In the second email, Appellant forwarded her fiancé, Juan Godoy, an article regarding arrests of several individuals for participating in a mortgage-fraud scheme. In the latter email, Appellant wrote: "Read below . . . . It's AMAZING and SCARY!!!!" We find that the district court did not abuse its discretion in admitting the newspaper articles, because the articles were not admitted for their truth and, therefore, were not hearsay. Rather, they were admitted to show their effect on Trujillo—that she was scared to see that people were going to jail for participating in mortgage-fraud schemes. Contrary to Appellant's argument, the article's effect on Trujillo did not depend on whether or not its contents were true. Additionally, the district court gave an adequate limiting instruction directing jurors not to consider the newspaper articles for their truth.  In any event, Trujillo cannot establish that admitting the

3

emails and article attachments affected her substantial rights. Aside from the articles, the government introduced a mound of circumstantial evidence concerning Trujillo's involvement in the bank-fraud scheme. Accordingly, Trujillo cannot establish that the admission of these two newspaper articles had a substantial influence on the outcome of her case.

## II.    JURY INSTRUCTIONS

### 1.    Theory-of-Defense Instruction

We review a district court's refusal to give a requested jury instruction for abuse of discretion. *United States v. Ariaz-Izquierdo*, 449 F.3d 1168, 1185 (11th Cir. 2006). A court abuses its discretion in refusing to give a requested jury instruction where "(1) the requested instruction was substantively correct, (2) the court's charge to the jury did not cover the gist of the instruction, and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense." *United States v. Culver*, 598 F.3d 740, 751 (11th Cir. 2010) (quotation marks and citation omitted). Trujillo requested the following jury instruction on a finder's fee:

> You have heard testimony regarding the payment of a "finder's fee" in connection with a real estate transaction. You are hereby instructed that you may not draw any negative inference against that person who or the Company which received the "finder's fee," because mere payment of a "finder's fee" is not prohibited by law.

4

As Appellant recognizes in her brief, however, under §475.41 of the Florida Statutes, unlicensed brokers or sales associates may not receive finder's fees. FLA. STAT. § 475.41. Thus, mere payment of a finder's fee is prohibited by law under certain circumstances. Therefore, Trujillo's requested instruction was not substantively correct and the district court did not err in finding that it was misleading. Moreover, an instruction concerning the legality of finder's fees would concern no factual or legal defense of Trujillo's. Juan Godoy, not Trujillo, received the finder's fee. Thus, whether or not Godoy's doing so was prohibited by law was simply irrelevant to Trujillo's factual or legal defense for bank and wire fraud. Rather, the fact that Trujillo disbursed funds from the Marco Island property closing to Godoy, her admitted fiancé and an unauthorized third party, provided evidence of her knowledge and intent to defraud a financial institution. Clearly, then, the district court's failure to give an instruction on the legality of finder's fees did not substantially impair Trujillo's ability to present an effective defense. Accordingly, the district court did not abuse its discretion in refusing to give the requested instruction.

> 2.    Deliberate-Ignorance Instruction

When an appellant objects to a jury instruction on different grounds than the appellant objected at trial, we review those instructions for plain error.[1] *See United States v. Puche*, 350 F.3d 1137, 1148 n. 5 (11th Cir. 2003) (noting that because defendants objected to the deliberate-ignorance instruction on different grounds on appeal, the plain-error standard of review applied).To establish plain error, an appellant must demonstrate that: "(1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." *United States v. Pena*, 684 F.3d 1137, 1151 (11th Cir. 2012). The burden of persuasion rests with the appellant on the third prong, "which almost always requires that the error must have affected the outcome of the district court proceedings." *Id.* (quoting *United States v. Pantle*, 637 F.3d 1172, 1177 (11th Cir. 2011)). Moreover, trial courts enjoy broad discretion in formulating jury instructions as long as the instructions comprise correct statements of law. *United States v. Lebowitz*, 676 F.3d 1000, 1014 (11th Cir. 2012).

---

[1] At trial, Appellant objected to the deliberate-ignorance instruction on the grounds that deliberate ignorance was not the Government's theory of prosecution, that the deliberate-ignorance instruction would result in burden shifting, and that it was tailored for a drug case and does not apply in a case like this. On appeal, Trujillo argues that in giving the deliberate-ignorance instruction, the district court violated her due process rights by urging the prosecutor to request the instruction and that the instruction should not have been given in this case where the level of *mens rea* is specific intent or willfulness. Appellant's arguments against the deliberate ignorance instruction before this court are markedly different from the arguments made before the district court.

Although Appellant argues that the district court violated her due process rights by suggesting the deliberate-ignorance instruction, Appellant cites no precedent for such a holding. Appellant also cites no authority for her argument that the deliberate-ignorance instruction is applicable only in cases where the sole *mens rea* at issue is knowledge. Rather, in *United States v. Schlei*, 122 F.3d 944 (11th Cir. 1997), this court specifically discounted Appellant's argument that by giving the deliberate ignorance instruction, the district court converted the willfulness element to mere knowledge. *Id.* at 974. In that case, we found that the deliberate-ignorance instruction, which greatly mirrored the one given in this case, "permitted the jury to substitute conscious avoidance for knowingly, but not willfully, and, the summary portion of the instruction required the jury to find either actual knowledge or 'deliberate avoidance.'" *Id.* Accordingly, Trujillo fails to establish that the district court's deliberate-ignorance instruction was an inaccurate reflection of the law or constituted error.

Moreover, Trujillo cannot demonstrate that the court's instruction affected her substantial rights. Because the district court gave a separate instruction on willfulness and explicitly acknowledged that the deliberate-ignorance instruction went only to the knowledge element, the court's instruction permitted the jury to substitute conscious avoidance for knowingly, but not willfully. Thus, the instruction did not, as Appellant contends, dilute the *mens rea* of the crimes

7

charged. In *Schlei*, we concluded that "[t]he court's deliberate ignorance instruction did not constitute plain error because it did not affect Schlei's substantial rights." *Id.* We find the same here, where Trujillo has failed to establish that the district court's deliberate-ignorance instruction affected her substantial rights.

III.    JUDGMENT OF ACQUITTAL

We review *de novo* the denial of a motion for acquittal based on the sufficiency of the evidence, resolving all inferences and credibility determinations in the government's favor. *United States v. Anderson*, 326 F.3d 1319, 1326 (11th Cir. 2013). To support Trujillo's conviction of bank fraud under 18 U.S.C. § 1344, the Government had to show that Trujillo knowingly executed or attempted to execute a scheme or artifice (1) to defraud a financial institution or (2) to obtain a financial institution's money or property by false or fraudulent means. 18 U.S.C. § 1344. Similarly, to prove that Trujillo committed wire fraud in violation of 18 U.S.C. § 1343, the Government had to establish that Trujillo devised or intended to devise a scheme or artifice to defraud or obtain money or property, and that Trujillo used, or caused to be used, wires in furtherance of the scheme or artifice. 18 U.S.C. § 1343. Evidence supporting a conviction is sufficient unless "no reasonable trier of fact could find guilty beyond a reasonable doubt." *Langford*,

647 F.3d at 1319 (11th Cir. 2011). Moreover, we judge sufficiency of the evidence by the same standard "whether the evidence is direct or circumstantial." *Id.*

We have no doubt that a reasonable jury could have found sufficient evidence to support Trujillo's guilt of bank and wire fraud. Contrary to Appellant's assertion, Trujillo's discredited testimony was not the only evidence supporting her conviction. In conducting the Marco Island property closing, Trujillo knowingly used wires to disburse proceeds from the property sale to unauthorized third parties, namely her fiancé, Walk the Line Properties, and Larrinaga Music Publishing, Inc. She did so despite the fact that testimony from Deborah Martin and Scott Jackson indicated that Trujillo should have known that disbursing funds to third parties was both frowned upon and potentially illegal. Trujillo also knew that Diaz did not bring cash to close the purchase of the Marco Island property, despite the fact that the HUD-1 indicated that he had a $69,493.14 cash-to-close responsibility. Rather than securing a cashiers check or wire transfer from Diaz at the closing, as Martin testified was the normal practice, Diaz executed a disbursement form. After Trujillo had already gotten the HUD-1 statement approved by Chase, she permitted Diaz's cash-to-close payment to be deducted from money she disbursed to Walk the Line Investments for "Repairs and Remodeling." Chase's underwriter also testified that he would not have approved the loan had he known that Diaz was not in fact providing the cash to close.

9

Additionally, Trujillo conducted closings of both the Marco Island and Miami properties. Thus, Trujillo knew that Diaz had just purchased the Marco Island Property, claiming that it was to be his primary residence, a mere month or so before she facilitated the closing of his purchase of the Miami property. Moreover, Trujillo tried to disburse money to Walk the Line and RII Contractors in the Miami property closing as well, which First Magnus prohibited her from doing. When First Magnus instructed Trujillo to remove the third-party distributions from the HUD-1 statement, she disbursed two payments to the seller for $72,000 and $164,000, of which the seller used the $164,000 to pay Walk the Line Investments and RII Contractors. Diaz also testified that he could not read English and that Trujillo did not translate the closing documents for him. Instead, Trujillo instructed him to sign the forms quickly so that they could finish faster. First Magnus's underwriter testified that they would not have approved the loan had they known that Diaz was a straw buyer, that he did not plan to occupy the property as his primary residence, or that he did not plan to provide any of cash at the closing. Although the jury could not consider the newspaper articles for their truth, one email demonstrated that Trujillo was amazed and scared by the arrest of eleven people in Miami-Dade County for involvement in mortgage-fraud schemes.

The preceding facts provide sufficient evidence for a reasonable jury to determine that Trujillo did in fact knowingly execute a scheme or artifice to

10

defraud Chase and First Magnus of loan money and that she used the wires in doing so. We, therefore, affirm the jury's verdict and the district court's denial of Trujillo's motion for judgment of acquittal.

## IV.    SENTENCING CALCULATION

We review the district court's determination of the amount of loss for clear error. *United States v. Maxwell*, 579 F.3d 1282, 1305 (11th Cir. 2009). "Clear error will be found only if [we are] left with a definite and firm conviction that a mistake has been committed." *Id.* (quotation omitted). The district court retains broad discretion in calculating loss, and may rely on all relevant conduct, including uncharged conduct, that the government proves by a preponderance of the evidence. *See United States v. Hamaker*, 455 F.3d 1316, 1336, 1338 (11th Cir. 2006) (considering predecessor U.S.S.G. § 2F1.1). Where § 3D1.2(d) requires grouping of multiple counts, relevant conduct includes all acts or omissions by the defendant "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G § 1B1.3(a)(2). Offenses are part of a common scheme or plan if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." *Id.*, § 1B1.3 cmt. n.9(A).

The district court did not clearly err by considering the three uncharged transactions, which the government proved by a preponderance of the evidence

11

through Lewis Sellars' testimony, as relevant conduct in calculating the total fraud-loss amount and increasing Trujillo's offense level by a total of 18 for the loss amount. The three transactions were part of the same course of conduct or common scheme or plan as the offenses of conviction. All five transactions involved had a common purpose of defrauding mortgage lenders and the same *modus operandi*, namely the use of straw buyers to purchase properties and distribute the loan proceeds to co-conspirators. The transactions were highly similar and all occurred between February and May 2007. Trujillo signed three HUD-1 statements and conducted the closings. In doing so, Trujillo failed to obtain the cash-to-close checks from buyers as represented in those HUD-1 statements and disbursed part of the sellers' proceeds to third parties without informing the lenders. The record therefore supports the court's finding that Trujillo knew or was willfully blind to the fact that the buyers were not providing the required cash-to-close. We therefore affirm Trujillo's sentence.

Accordingly, the judgment of the district court is

**AFFIRMED.**