[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14367
Non-Argument Calendar
_____

D.C. Docket No. 7:14-cr-00051-HL-TQL-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIE HENDERSON,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(January 5, 2017)

Before JORDAN, ROSENBAUM, and JULIES CARNES, Circuit Judges.

PER CURIAM:

Due to an error in calculating Defendant-Appellant Willie Henderson's

offense level under the United States Sentencing Guidelines, the district court

sentenced him using a higher guideline range than the correct one.   Both Henderson and the government now agree that the district court erred, but the error went overlooked throughout the proceedings below.  Because the issue was raised for the first time on appeal, we may correct the error only if, among other things, Henderson shows that the error affected his substantial rights, a point the government contests.  Taking guidance from the Supreme Court's recent decision in *Molina-Martinez v. United States*, 578 U.S. ___, 136 S. Ct. 1338 (2016), we conclude that Henderson's substantial rights have been affected by the guideline-calculation error.  We therefore vacate and remand for resentencing.

## I.

Henderson, along with a co-defendant, managed a large-scale dog-fighting operation.   In general terms, Henderson maintained dogs on his property, conditioned and trained dogs for a fee, bred and registered the dogs, and transported the dogs to organized dog-fight gambling events throughout the Southeast.   When law enforcement executed a search warrant at Henderson's property, they found over twenty pit-bull terriers with scars and injuries consistent with dog fights, an array of items and devices used to train the dogs for fighting, other dog-fighting paraphernalia, drugs, and two guns.

A federal grand jury indicted Henderson on eight counts of dog-fighting, drug, and firearm offenses.  Pursuant to a written plea agreement, Henderson pled

guilty to one count of conspiracy to travel in interstate commerce in aid of unlawful activities and to sponsor and exhibit a dog in an animal fighting venture, in violation of 18 U.S.C. §§ 371 and 1952, and 7 U.S.C.§ 2156 (Count I), and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count IX).  In exchange for his plea, the government agreed to dismiss the remaining six counts.

A probation officer prepared a presentence investigation report ("PSR") calculating Henderson's guideline range using the multiple-count adjustment rules of Chapter 3, Part D of the Guidelines Manual.  The probation officer separated Henderson's offenses into three groups—the conspiracy conviction was separated into two groups to account for the two substantive offenses he conspired to commit, *see* U.S.S.G. § 1B1.2(d)—and then determined the adjusted offense level applicable to each group.  *See* U.S.S.G. §§ 3D1.1–3D1.3.  The three groups were as follows:

> *Group I    — Conspiracy to travel in interstate commerce in aid of unlawful activities (adjusted offense level 12);
>
> *Group II    — Conspiracy to sponsor and exhibit a dog in an animal-fighting venture (adjusted offense level 12); and
>
> *Group III    — Possession of a firearm by a convicted felon (adjusted offense level 22).

Next, the probation officer determined a combined offense level for the three groups.  According to § 3D1.4, the combined offense level is "determined by

3

taking the offense level applicable to the Group with the highest offense level" and then adding an additional offense-level increase derived from the table in § 3D1.4. The amount of the additional table increase, in turn, is derived from the number of "Units" counted. U.S.S.G. § 3D1.4. Units are counted as follows: (a) one Unit for the Group with the highest offense level and for each Group that is within 4 levels of the most serious Group; (b) one-half Unit for any Group that is 5 to 8 levels less serious than the most serious Group; (c) no Units for any Group that is 9 or more levels less serious than the most serious Group. *Id.* § 3D1.4(a)–(c).

Applying these rules, the probation officer correctly calculated a total of one Unit. In particular, Henderson received one unit for Group III, "the Group with the highest offense level," U.S.S.G. § 3D1.4(a), and no units for Groups I and II, because the guideline says to "[d]isregard any Group that is **9** or more levels less serious than the Group with the highest offense level," *id.* § 3D1.4(c). Under § 3D1.4's table, one Unit means <u>no</u> additional increase to the offense level of the most serious Group. Thus, Henderson's combined offense level should have been 22, equal to the offense level of Group III.

However, the probation officer appears to have overlooked the table and instead simply treated the one Unit as a one-level increase. So, the PSR states that Henderson's combined offense level was 23 instead of 22. After a three-level reduction for acceptance of responsibility, Henderson's total offense level was 20

4

when it should have been 19.  This error went unnoticed by the parties and was eventually adopted by the district court at sentencing.  As a result of the error, Henderson's guideline range, based on a criminal history category of IV and a total adjusted offense level of 20, was 51 to 63 months of imprisonment when it should have been 46 to 57 months.

At Henderson's sentencing, the district court adopted the PSR without objection by either party.  The government asked for a sentence at the high end of the 51–63 month range, while Henderson asked for a sentence at the low end.  Ultimately, the district court imposed a total sentence of 93 months of imprisonment, ordering the sentences on each count to run partially consecutively.  In particular, the court sentenced Henderson to the statutory maximum of 60 months on the conspiracy count (Count I) and to the high end of the guideline range, or 63 months, on the felon-in-possession count (Count IX), with the sentence on Count IX to run concurrently with the final 30 months of the sentence on Count I.  The court chose to run the sentences partially consecutively primarily because of Henderson's prior criminal record.  Henderson now appeals.

## II.

Because Henderson did not object to the guideline-calculation error below, we review for plain error only.  *United States v. Bennett*, 472 F.3d 825, 831 (11th Cir. 2006).  Under that standard, "there must be (1) an error (2) that is plain and

(3) that has affected the defendant's substantial rights." *United States v. Madden*, 733 F.3d 1314, 1322 (11th Cir. 2013); *see* Fed. R. Crim. P. 52(b).  If these three prongs are met, we may exercise our discretion to correct the error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Madden*, 733 F.3d at 1322.

The parties do not dispute that the first two prongs of plain-error review are met in this case.  As explained above, the district court erroneously sentenced Henderson using a guideline range (51–63 months) higher than the applicable one (46–57 months), and the error that produced the inaccurate range was clear under existing law.  Therefore, the question before us is whether the error affected Henderson's substantial rights, which means that Henderson "must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different."  *Molina-Martinez*, 136 S. Ct. at 1343 (internal quotation marks omitted).

The Supreme Court recently addressed the application of plain-error review to guideline-calculation errors in *Molina-Martinez*.  In that case, as here, the district court applied a guideline range higher than the applicable one and no timely objection was made. *Id.* at 1344.  Applying plain-error review on appeal, the Fifth Circuit held that the defendant had not established that the error affected his substantial rights because his sentence was still within the correct range and

6

there was no "additional evidence" to show that his sentence would have been different had he been sentenced using the correct range. *Id.* at 1344–45.

The Supreme Court rejected the Fifth Circuit's approach and found that the defendant had shown prejudice to his substantial rights. The Court held that "the fact that the erroneous, and higher, Guidelines range set the wrong framework for the sentencing proceedings" can, and "most often will," be sufficient on its own "to show a reasonable probability of a different outcome absent the error." *Id.* at 1345. No "further showing of prejudice" is required when the court relies on an incorrect, higher guideline range, "even if the ultimate sentence falls within both the correct and incorrect range." *Id.*

The Court elaborated that its holding followed "from the essential framework the Guidelines establish for sentencing purposes." *Id.* While the Guidelines are advisory, they are the lodestar of the sentencing process: they serve as the starting point and framework for sentencing and they anchor the sentencing court's discretion in selecting an appropriate sentence. *Id.* at 1345–46 (citing *Gall v. United States*, 552 U.S. 38, 49, 128 S. Ct. 586, 596 (2007), and *Peugh v. United States*, 569 U.S. ___, ___, 133 S. Ct. 2078, 2083 (2013)). "In the usual case, then, the systemic function of the selected Guidelines range will affect the sentence." *Id.* at 1346. Therefore, "[i]n most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has

7

demonstrated a reasonable probability of a different outcome." *Id.* And that showing will, "again in most cases, . . . suffice for relief if the other requirements of Rule 52(b) are met." *Id.*

Of course, sentencing is particular to each defendant and "[t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist." *Id.* For example, a judge's explanation of the reasons for the selected sentence may "make it clear that the judge based the sentence . . . on factors independent of the Guidelines." *Id.* at 1346–47. The government remains free to counter the defendant's showing of prejudice by pointing to parts of the record that establish that the sentence was imposed "irrespective of the Guidelines range." *Id.* But if "the record is silent as to what the district court might have done had it considered the correct Guidelines range," the court's reliance on an incorrect range to sentence a defendant alone will ordinarily be sufficient to show prejudice, "[a]bsent unusual circumstances." *Id.* at 1347.

This Circuit's precedent is largely consistent with *Molina-Martinez*. For example, in *United States v. Frazier*, 605 F.3d 1271, 1282–83 (11th Cir. 2010), we vacated and remanded for resentencing on plain-error review where the defendant had received a sentence "outside of his correct Guidelines range." Likewise, in *Bennett*, we held that an error in calculating the guideline range affected the

defendant's substantial rights where the district court "expressly indicated a desire to impose a sentence near the low end of the sentencing Guidelines range." *Bennett*, 472 F.3d at 834.  However, in *United States v. Pantle*, 637 F.3d 1172, 1178 (11th Cir. 2011), we appear to have required the defendant to proffer additional evidence of prejudice beyond the use of an incorrect range.  *See id.* (finding no prejudice to substantial rights where this Court "[did] not know that [the defendant] would not have received the same sentence without the (assumed) error").  Such a requirement is no longer good law in light of *Molina-Martinez*, but, in any case, the *Pantle* panel found that the judge's comments at sentencing established that the defendant would have received the same sentence absent the error, and that holding is consistent with *Molina-Martinez.  Id.*

In this case, it is undisputed that the district court used an incorrect, higher guideline range than the applicable one for Henderson's sentencing.  Absent some evidence to the contrary, then, Henderson has shown a reasonable probability of a different result.  *See Molina-Martinez*, 136 S. Ct. at 1345.  To counter Henderson's showing of prejudice, the government points to the judge's decision to structure the sentence to run partially consecutively.  This decision, in the government's view, necessarily shows that the judge crafted a sentence irrespective of the incorrect guideline range.  We disagree.

Beginning with the choice of sentences on Counts I and IX, it is clear that the guideline range played its characteristic central role. Both sentences appear to have been based on the high end of the incorrect guideline range (63 months' imprisonment), as the government had requested, though the sentence on Count I was reduced to the statutory maximum of 60 months' imprisonment. These sentences both exceeded the correct range of 46 to 57 months. The guideline range, in other words, appears to have set the framework for the judge's sentencing decisions with respect to both Counts. *See id.*

While the judge then chose to run the sentences partially consecutively, there is nothing about that decision which indicates whether the judge would have imposed the same 93-month total sentence using the correct guideline range. In fact, the way the judge reached his chosen sentence may suggest the opposite. For example, suppose the judge, made the same apparent decisions as he did at sentencing, only this time, he had available to him the correct sentencing range. Henderson would have received sentences at the top end of the guideline range, or 57 months, on both counts, with the 57-month sentence on Count IX running concurrently with the final 30 months of the sentence on Count I (or less, if based on half that count's sentence). Under those facts, the total sentence would have been 84 months (or less), close to a year shorter than his current sentence. Or, perhaps, the judge would have imposed the statutory maximum of 60 months on

Count I, 57 months on Count IX, and the same 30-month overlap. The result would be 87 months, still six months shorter that the total sentence imposed.

This is all just conjecture, of course, and we certainly could come up with some plausible scenario where the judge would have imposed the same sentence even under the correct guideline range. But that is beside the point. The point is that "the record is silent as to what the district court might have done had it considered the correct Guidelines range." *Molina-Martinez*, 136 S. Ct. at 1347. In these circumstances, and because this is an "ordinary case," the judge's reliance on an incorrect range to sentence Henderson is sufficient on its own to show prejudice to his substantial rights. *Id.* The fact that the total sentence exceeded the incorrect range does not change matters, because "[e]ven if the sentencing judge sees a reason to vary from the Guidelines, 'if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence.*'" *Id.* at 1345 (quoting *Peugh*, 133 S. Ct. at 2083) (emphasis in *Molina-Martinez*). That is the case here.

In sum, because Henderson was sentenced on the basis of an incorrect, higher guideline range than the applicable one, and the record is silent as to how the district court would have sentenced him absent the error, he has shown "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Id.* at 1343. As in *Frazier* and *Bennett*, we exercise our

discretion to correct the miscalculation error because it "seriously affected the fairness, integrity, or public reputation of the judicial proceedings in this case." *Frazier*, 605 F.3d at 1283; *Bennett*, 472 F.3d at 834.

Henderson has established plain error, and we vacate his sentence and remand this case for the purpose of resentencing based on the correct total offense level and corresponding guideline range.

**VACATED AND REMANDED**.