[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14571
Non-Argument Calendar
_____

D.C. Docket No. 9:14-cr-80007-KAM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

OSCAR IVAN PARDO-GERENA,
a.k.a. Gilborto Alverez,
a.k.a. Gilbert Albert Garcia,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 28, 2015)

Before TJOFLAT, WILSON, and JORDAN, Circuit Judges.

PER CURIAM:

Oscar Pardo-Gerena appeals his 54-month sentence, imposed after he pled guilty to conspiring to knowingly transport stolen goods and merchandise in interstate commerce, in violation of 18 U.S.C. §§ 371 and 2314. Mr. Pardo-Gerena argues the district court erred in calculating the loss amount under U.S.S.G. § 2B1.1, applying a two-level reckless endangerment enhancement during flight under U.S.S.G. § 3C1.2, and applying a two-level sophisticated means enhancement under U.S.S.G § 2B1.1(b)(10)(C). In addition, Mr. Pardo-Genera contends that his sentence was procedurally and substantively unreasonable. After review of the parties' briefs and the record, we affirm.

**I**

On December 9, 2013, Mr. Pardo-Gerena entered the United States from Colombia via Miami, Florida, with a ticket providing for a return flight to Colombia on December 22, 2013. The FBI, as part of an ongoing investigation, conducted physical and GPS surveillance on Mr. Pardo-Gerena and five other co-conspirators from December 14 through 17, 2013, as the six men traveled from Florida to Illinois. To make the trip, Mr. Pardo-Gerena rented a Chrysler minivan and an Infiniti G37 in Miami using a false identification.

2

Mr. Pardo-Gerena and his co-conspirators made numerous trips from Illinois to Missouri to conduct nighttime surveillance of the Diamond Family Jewelry Store. They also obtained advanced tools in preparation for burglarizing the store. Mr. Pardo-Gerena and his co-conspirators went to the store the evening of December 21. FBI agents witnessed three individuals walk behind the jewelry store and heard footsteps and drilling sounds coming from the store's roof. The agents spotted three of Mr. Pardo-Gerena's co-conspirators in the store and arrested them. A fourth co-conspirator fled, and agents later found him hiding under a nearby bridge. At this point, only Mr. Pardo-Gerena and one other co-conspirator had not been apprehended.

During the arrests, the Infiniti—which had been parked near the store—pulled out of a parking lot. FBI Special Agent Shelton Hammonds drove up and tried to cut off the Infiniti, which was traveling at a high speed. Agent Hammonds then swerved out of the Infiniti's way to avoid an accident, and the Infiniti continued down the road. Agent Hammonds tried to follow the Infiniti, but was unsuccessful. He later found the Infiniti abandoned in a neighborhood near the store. The FBI arrested Mr. Pardo-Gerena a few days later at the Ft. Lauderdale-Hollywood International Airport as he was attempting to leave the United States.[1]

---

[1] Law enforcement never apprehended or identified the sixth suspect.

3

On January 14, 2014, a federal grand jury charged Mr. Pardo-Gerena and the four apprehended co-conspirators with conspiring to transport stolen goods in interstate commerce in violation of 18 U.S.C. §§ 371 and 2314. Mr. Pardo-Gerena, pursuant to a plea agreement, pled guilty in April of 2014.

In September of 2014, the district court held Mr. Pardo-Gerena's sentencing hearing. The presentence investigation report determined that Mr. Pardo-Gerena had a base offense level of 6 pursuant to U.S.S.G. § 2 B1.1(a)(2), because the offense involved fraud or deceit. The report included a 16-level enhancement for loss amount under § 2B1.1 because the intended loss amount exceeded $1,000,000 but was not more than $2,500,000. Additionally, the report included a two-level reckless endangerment enhancement during flight under § 3C1.2; a two-level sophisticated means enhancement under § 2B1.1(b)(10)(C); a three-level aggravating role adjustment under § 3B1.1(b); and a three-level reduction for acceptance of responsibility under § 3E1.1(a) and (b). Mr. Pardo-Gerena objected to the enhancements for loss amount, sophisticated means, reckless endangerment, and his role in the offense.[2]

Regarding the calculation for loss, the jewelry store owner testified that the store contained approximately $1.2 million worth of goods on the night of the attempted burglary. This approximation was based on the value of inventoried

---

[2] The district court sustained Mr. Pardo-Genera's objection as to the aggravating role adjustment.

4

items, consignment items, items left at the store for repair, and other store items. Mr. Pardo-Gerena argued that the owner speculated concerning the value of the consignment items and the items left at the store for repair. The district court overruled Mr. Pardo-Gerena's objection and applied the 16-level enhancement, finding that the intended loss exceeded $1 million given the owner's testimony.

Concerning the sophisticated means enhancement, Mr. Pardo-Gerena argued that although the attempted burglary might have appeared sophisticated, the government had not shown that the conspiracy to transport stolen goods in interstate commerce itself was sophisticated. The district court overruled Mr. Pardo-Gerena's objection, finding that the attempted burglary was relevant conduct under U.S.S.G. § 1B1.3, and it was sufficient that the attempted burglary involved sophisticated means.

Next, Mr. Pardo-Gerena objected to the reckless endangerment enhancement and argued that the evidence was insufficient to find that he had been driving the Infiniti and that the Infiniti was driven in a manner that created a substantial risk of death. Agent Hammonds testified that Mr. Pardo-Gerena drove the fleeing Infiniti, based upon video from that night. The district court found that, because four of the six suspects were arrested that night, the fleeing Infiniti could have only been driven by either Mr. Pardo-Gerena or the sixth suspect. Agent Hammonds testified concerning the location of Mr. Pardo-Gerena and the unidentified sixth suspect

5

relative to the location of the Infiniti during the attempted burglary. The district court overruled the objection, finding that Mr. Pardo-Gerena was driving the Infiniti at the time of its flight, and the Infiniti created a serious risk of bodily injury or death to another person during the course of flight.

Mr. Pardo-Gerena now appeals.

## II

Mr. Pardo-Gerena first argues that the district court erred because it calculated the $1.2 million intended loss amount based in part on the owner's speculation. We review the district court's factual findings for clear error. *See United States v. Delgado*, 56 F.3d 1357, 1363 (11th Cir.1995). We review the district court's application of the sentencing guidelines de novo. *Id.*

"A district court's determination regarding the amount of loss for sentencing purposes is reviewed for clear error." *United States v. Nosrati-Shamloo*, 255 F.3d 1290, 1291 (11th Cir. 2001). "The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence" and so "the court's loss determination is entitled to appropriate deference." § 2B1.1 cmt. n.3(C).

In calculating the loss amount, "loss is the greater of actual loss or intended loss." *Id.* cmt. n.3(A). "Intended loss" is "pecuniary harm that was intended to result from the offense." *Id.* cmt. n.3(A)(ii). Where the loss amount is greater than

6

$1,000,000 but not more than $2,500,000, a defendant receives a 16-level enhancement. *See* § 2B1.1(b)(1)(I). Where the loss amount is greater than $400,000, but not more than $1,000,000, a defendant receives a 14-level enhancement. *See* § 2B1.1(b)(1)(H).

The district court "need only make a reasonable estimate of the loss amount." § 2B1.1 cmt n.3(C). The court does not need to value the loss with precision. *United States v. Dominguez*, 109 F.3d 675, 676 (11th Cir. 1997). Although "estimates are permissible, courts must not *speculate concerning the existence of a fact* which would permit a more severe sentence under the guidelines." *United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997) (emphasis added). The amount of loss must be proven by a preponderance of the evidence, and the burden must be satisfied with "*reliable* and *specific* evidence." *Id.* (emphasis added).

The evidence supported the district court's finding that Mr. Pardo-Gerena and his codefendants intended to "take out every piece of jewelry that they could carry." The district court found the intended loss was approximately $1.2 million. This sum was based on the owner's testimony that the store contained $860,338 of inventoried items, $210,000 of consignment items, $115,000 of items left at the store for repair, $30,000 of diamond melle, and $10,000 of scrap gold.

7

Mr. Pardo-Gerena argues that the owner's testimony regarding the value of the consignment items and the items left at the store for repair amounted to speculation and that the district court clearly erred by including these values in its loss calculation. To review this argument, we need only look to evidence of how the owner distinguished inventoried items and consignment items.

Inventoried items were owned by the store, kept on-site, and sold to prospective customers. The store kept track of each inventoried item by using a stock keeping unit (SKU) number. The owner, using this tracking system, testified that his store possessed $860,338 worth of inventoried items on the night of the attempted burglary. Consignment items included merchandise not owned by the store but kept in the store for vendors. The store would keep temporary custody, but not ownership, over these items. If a customer was interested in buying a consigned item, the store would assign an SKU number to the item, thus making it part of the store's inventoried items. Then, the store would sell this newly inventoried item to the customer. The owner testified that the store possessed $210,000 in consignment items on the night of the attempted burglary. Though the store did not keep its own financial records for these consigned items, the owner substantiated this $210,000 valuation using the financial records of one of its vendors. Because this testimony amounts to specific and reliable evidence, the district court did not clearly err by relying on such testimony in its loss calculation.

8

Given that the government sufficiently showed that the store possessed more than $1 million in inventoried and consignment items on the night in question, the district court properly included those items in the loss calculation. We thus need not evaluate Mr. Pardo-Gerena's arguments regarding the value of the other items in the store.

### III

Mr. Pardo-Gerena next raises a three-pronged argument that the district court erred in applying the reckless endangerment enhancement. Mr. Pardo-Gerena argues that there was insufficient evidence to find that he was the driver of the Infiniti that fled from the law enforcement officers, that the Infiniti driver's conduct constituted reckless endangerment during flight, and that the Infiniti driver knowingly fled from law enforcement officers.

The government must prove by a preponderance of the evidence the facts necessary to support a sentencing enhancement. *See United States v Askew*, 193 F.3d 1181, 1183 (11th Cir 1999). "This burden requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012) (internal quotation marks omitted). When the defendant challenges one of the facts supporting his sentence, the government must prove the disputed fact with "reliable and specific evidence." *See United States v. Rodriguez*, 732 F.3d 1299, 1305 (11th Cir. 2013).

9

First, we review Mr. Pardo-Gerena's argument that there was insufficient evidence for the court to find that he was the driver of the Infiniti. As the district court explained, at the time the Infiniti was driving away, its driver could have been only Mr. Pardo-Gerena or the unidentified sixth suspect, because the other four suspects were already in custody. After reviewing the store's security video, Agent Hammonds identified Mr. Pardo-Gerena, based on his gait and clothing, as the person who fled in the Infiniti. Further, Agent Hammonds testified that the unidentified sixth suspect (the only other possible driver of the Infiniti) was not inside the store during the attempted burglary, and there were signs that the sixth individual fled the area on foot through a white picket fence. Agent Hammonds' testimony thus provided reliable and specific evidence for the district court to find that Mr. Pardo-Gerena was more likely than not the Infiniti driver.

Next, we review Mr. Pardo-Gerena's argument that there was insufficient evidence that the Infiniti driver created a substantial risk of death or serious bodily injury. A reckless endangerment enhancement applies "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer . . . ." U.S.S.G § 3C1.2. "Another person" means "any person, except a participant in the offense who willingly participated in the flight." *Id.* cmt. n.4.

10

"Driving a car at a high speed in an area where people are likely to be found constitutes reckless disregard for others' safety." *United States v. Washington*, 434 F.3d 1265, 1268 (11th Cir. 2006) (affirming the district court's application of the enhancement). Agent Hammonds testified that the Infiniti pulled out of the parking lot, forcing him to swerve to avoid a collision. Then the Infiniti turned onto a public street going approximately 50 or 60 miles per hour on icy roads. Thus, the district court had sufficient evidence to find that Mr. Pardo-Gerena recklessly created a substantial risk of death or serious bodily injury.

Finally, Mr. Pardo-Gerena argues that there was no evidence from which the district court could find that he knew he was fleeing law enforcement officers. Because he did not object on this basis in the district court, our review is only for plain error. *See United States v. Pantle*, 637 F.3d 1172, 1174 (11th Cir. 2011). Under plain error review, "(1) there must be error; (2) the error must be plain; (3) the error must affect the appellant's substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.*

The reckless endangerment enhancement applies "only where the defendant knows he is fleeing from a law enforcement officer who is in pursuit of the defendant." *United States v. Martikainen*, 640 F.3d 1191, 1194 (11th Cir. 2011). In *Martikainen*—upon which Mr. Pardo-Gerena relies—the defendant had absconded

with his son on a boat traveling from Florida toward the Yucatan Peninsula. Three days later, law enforcement agents received a tip as to his whereabouts and began to follow the defendant from a distance of eight miles. The next day, the law enforcement officers boarded the defendant's boat, and he fully cooperated with the officers. The court found that the defendant did not knowingly flee a law enforcement officer. *Id.* at 1193-94.

Here, the evidence supports the finding that Mr. Pardo-Gerena fled because he knew law enforcement officers were in pursuit. Mr. Pardo-Gerena, in the Infiniti, sped out of a parking lot just as law enforcement agents came upon the scene to arrest his co-conspirators. Agent Hammonds tried to use his car to block Mr. Pardo-Gerena to prevent him from driving away, and then pursued Mr. Pardo-Gerena, who was fleeing. Given this evidence, the district court did not commit plain error in finding that Mr. Pardo-Gerena knew that law enforcement was pursuing him.

## IV

Mr. Pardo-Gerena contends that the district court erred in applying a two-level sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10)(C). He argues that the government presented evidence that only the attempted burglary was sophisticated, not that the offense of conviction (conspiracy to transport stolen goods in interstate commerce) was sophisticated.

12

We review for clear error a district court's factual finding that sophisticated means were used. *See United States v. Barrington*, 648 F.3d 1178, 1199 (11th Cir. 2011). Sophisticated means is defined as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." § 2B1.1 cmt. n.9(B). "There is no requirement that each of a defendant's individual actions be sophisticated in order to impose the enhancement. Rather, it is sufficient if the totality of the scheme was sophisticated." *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010) (affirming a sophisticated means enhancement where the defendant's acts included conducting extensive research, using forged documents and unwitting couriers, and transferring funds to others who withdrew cash for him).

In determining a defendant's specific offense characteristics, the district court must consider all of the defendant's "relevant conduct," as defined in § 1B1.3. When a defendant jointly undertakes criminal activity, "relevant conduct" includes all acts by the defendant, and all reasonably foreseeable acts of others in furtherance of the jointly undertaken criminal activity, "that occurred *during the commission* of the offense of conviction, *in preparation* for that offense, or in the course of attempting to *avoid detection or responsibility* for that offense." § 1B1.3(a)(1)(B) (emphasis added).

13

Mr. Pardo-Gerena's primary argument—that any sophisticated conduct occurred in relation to the attempted burglary, but not the conspiracy to transport the proceeds from the burglary in interstate commerce—is meritless. The attempted burglary was part of the means by which Mr. Pardo-Gerena and his co-conspirators sought to obtain the items to transport in interstate commerce, and thus the burglary was relevant conduct under § 1B1.3(a)(1)(B) as an act done in preparation for the offense of conviction.

Further, there was sufficient evidence to find that the totality of Mr. Pardo-Gerena's scheme employed sophisticated means. First, Mr. Pardo-Gerena and his co-conspirators left Florida using false identities, stayed in Illinois, and planned to rob a jewelry store in Missouri. *See* § 2B1.1 cmt n.9 ("[L]ocating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means."). Second, they spent one week surveying the store to study its alarm, telephone, electrical systems, and wires. Third, they used false identifications to rent cars, storage units, and hotel rooms, obtained cell phone jammers to disrupt law enforcement's ability to use radios, and  purchased advanced tools to disable the store's alarm, security cameras, and phone lines to avoid detection. The district court had sufficient evidence to find that Mr. Pardo-Gerena employed sophisticated means to perpetrate and conceal his scheme. *See Ghertler*, 605 F.3d at 1267.

14

## V

Mr. Pardo-Gerena asserts that his sentence was procedurally unreasonable because the district court inappropriately weighed the 18 U.S.C. § 3553(a) factors and based its sentence on speculation that he was part of an international burglary ring. In addition, Mr. Pardo-Gerena argues that his sentence was substantively unreasonable because the district court had "no reason to go above the low end of the guidelines" based on the facts of the case. We disagree.

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. *See Gall v. United States*, 552 U.S. 38, 41 (2007). In reviewing the reasonableness of a sentence, we first ensure that the sentence was procedurally reasonable, meaning that the district court properly calculated the Guideline range, treated the Guidelines as advisory, considered the §3553(a) factors, did not select a sentence based on clearly erroneous facts, and adequately explained the chosen sentence. *See id*. at 51. Once we determine that a sentence is procedurally sound, we examine whether the sentence was substantively reasonable in light of the totality of the circumstances. *See id.*

The party challenging the sentence bears the burden of showing that it is unreasonable in light of the record and the § 3553(a) factors. *See United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). As long as the sentence imposed is a reasonable one, we will not set the sentence aside merely because we determine

that a different sentence would have been more appropriate. *See United States v. Irey*, 612 F.3d 1160, 1191 (11th Cir. 2010) (en banc). Rather, we will set aside a sentence only if we determine, "after giving a full measure of deference to the sentencing judge, that the sentence imposed truly is unreasonable." *Id.* "The district court may determine on a case-by-case basis the relative weight to give the Guidelines range in light of the other section 3553(a) factors." *United States v. Lozano*, 490 F.3d 1317, 1324 (11th Cir. 2007). Although we do not automatically presume a within-Guidelines sentence to be reasonable, we expect that such a sentence is reasonable. *See United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008).

We reject Mr. Pardo-Gerena's argument that his sentence is procedurally unreasonable because the district court found, in part, that he was part of an international burglary ring. Mr. Pardo-Gerena cites nothing in the record to support this assertion. The district court did not mention an international burglary ring in pronouncing Mr. Pardo-Gerena's sentence, but rather stated that it considered the parties' statements, the presentence investigation report, the Sentencing Guidelines, and the relevant § 3553(a) factors. Mr. Pardo-Gerena has failed to show that his sentence was procedurally unreasonable. *See Tome*, 611 F.3d at 1378.

16

Mr. Pardo-Gerena finally argues that his sentence was substantively unreasonable because the district court sentenced him above the low end of his 46 to 57 month advisory Sentencing Guidelines range. Mr. Pardo-Gerena's 54-month sentence was within his advisory range and we conclude it was reasonable based on the facts of the case. He offers no valid argument why the district court's within-Guidelines sentence was substantively unreasonable.

## VI

The district court did not err in calculating the intended loss amount or in applying the sophisticated means and reckless endangerment enhancements. And Mr. Pardo-Gerena failed to show that his sentence was procedurally or substantively unreasonable. Accordingly, we affirm Mr. Pardo-Gerena's sentence.

**AFFIRMED.**